**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA,

     *Plaintiff*,

     *v.*

JARED DEMARINIS, *in his official
capacity as the State Administrator of
Elections for the State of Maryland*,

     *Defendant*.

Case No. 1:25-cv-03934-SAG

**[CORRECTED] MEMORANDUM OF LAW IN SUPPORT OF THE MARYLAND/DC
ALLIANCE FOR RETIRED AMERICANS' MOTION TO INTERVENE AS DEFENDANT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

   I.     Federal law has long made voter list maintenance a state responsibility,
        consistent with the constitutional separation of powers. ...................................2

   II.    The Department of Justice has embarked on an unprecedented nationwide
        campaign to collect personal voter registration data held by the states..........................4

   III.   The Department of Justice sues Maryland to obtain its complete registration list. ..........5

   IV.   The Alliance's members' sensitive personal information is placed in jeopardy
        by DOJ's demands. ..........................................................................................6

LEGAL STANDARD......................................................................................................... 7

ARGUMENT .................................................................................................................... 8

   I.     Proposed Intervenor is entitled to intervene as of right. ....................................8

       A.   The motion to intervene is timely and will not prejudice the parties. .......................8

       B.   The Alliance has substantial, protectible interests that are threatened by
           DOJ's requested relief. ...........................................................................8

       C.   The Alliance's interests are not adequately represented by existing parties. ..........11

   II.    Alternatively, the Alliance should be granted permissive intervention..........................15

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*Ala. ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ................................ 5

*Alt v. U.S. E.P.A.*,
    758 F.3d 588 (4th Cir. 2014) ................................ 7

*Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*,
    777 F. Supp. 3d 253 (S.D.N.Y. 2025) ................................ 9

*Am. Humanist Ass'n v. Md.-Nat'l Cap. Park & Plan. Comm'n*,
    303 F.R.D. 266 (D. Md. 2014) ................................ 16

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ................................ 2

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
    241 F.R.D. 100 (D. Conn. 2007) ................................ 15

*Bellitto v. Snipes*,
    935 F.3d 1192 (11th Cir. 2019) ................................ 14

*Bellitto v. Snipes*,
    No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ................................ 13

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022) ................................ 2, 13

*Brennan v. N.Y.C. Bd. of Educ.*,
    260 F.3d 123 (2d Cir. 2001) ................................ 14

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
    No. 18 CIV 11657, 2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020) ................................ 15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ................................ 12

*Commonwealth of Virginia v. Westinghouse Elec. Corp.*,
    542 F.2d 214 (4th Cir. 1976) ................................ 11

*Dinkens v. Att'y Gen. of U.S.*,
    285 F.2d 430 (5th Cir. 1961) ................................ 5

*Donaldson v. United States,*
    400 U.S. 517 (1971) ............................................................................. 8

*Feller v. Brock,*
    802 F.2d 722 (4th Cir. 1986) ............................................... 8, 12, 16

*Foster v. Love,*
    522 U.S. 67 (1997) ............................................................................. 2

*Francis v. Chamber of Com. of U.S.,*
    481 F.2d 192 (4th Cir. 1973) ............................................................ 9

*Fund for Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ........................................................ 12

*Harris-Reese v. United States,*
    No. 19-cv-1971-TDC, 2021 WL 3887707 (D. Md. Aug. 31, 2021) .................... 8

*Harrison v. Fireman's Fund Ins. Co.,*
    No. 11-cv-1258-ELH, 2011 WL 3241452 (D. Md. July 28, 2011) ................ 8

*Husted v. A. Philip Randolph Inst.,*
    584 U.S. 756 (2018) ....................................................................... 2, 3

*Issa v. Newsom,*
    No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10,
    2020) ............................................................................................ 10

*JLS, Inc. v. Pub. Serv. Comm'n of W. Va.,*
    321 F. App'x 286 (4th Cir. 2009) ................................................... 12

*Jud. Watch, Inc. v. Ill. State Bd. of Elections,*
    No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ............ 10

*Kalbers v. U.S. Dep't of Just.,*
    22 F.4th 816 (9th Cir. 2021) ...................................................... 9, 11

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ........................................................... 5

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d Cir. 1998) ..................................................... 12, 14

*La Union del Pueblo Entero v. Abbott,*
    29 F.4th 299 (5th Cir. 2022) ......................................................... 11

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
659 F.3d 421 (5th Cir. 2011) ................................ 11

*League of Women Voters of N.C. v. North Carolina*,
No. 1:13CV660, 2014 WL 12770081 (M.D.N.C. Jan. 27, 2014) .................... 16

*Moore v. Circosta*,
No. 1:20CV911, 2020 WL 6597291 (M.D.N.C. Oct. 8, 2020) ...................... 16

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*,
646 F.2d 117 (4th Cir. 1981) ................................ 7, 11

*Paher v. Cegavske*,
No. 3:20-cv-002, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ...................... 10

*Pub. Int. Legal Found. v. Bellows*,
92 F.4th 36 (1st Cir. 2024)................................ 6

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) ................................ 3

*In re Sealed Case*,
237 F.3d 664 ................................ 9, 11

*Sec. & Exch. Comm'n v. Merrill*,
No. 18-cv-2844-RDB, 2020 WL 5747193 (D. Md. Sep. 25, 2020) .................... 9

*Teague v. Bakker*,
931 F.2d 259 (4th Cir. 1991) ................................ 8, 9

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972)................................ 2, 11, 13

*United States v. Benson*,
No. 1:25-cv-01148-HYJ-PJG (W.D. Mich. 2025)............................ 1

*United States v. Cargill Meat Sols.*,
No. 22-cv-1821-SAG, 2025 WL 1257931 (D. Md. Apr. 30, 2025) .................... 8

*United States v. Oregon*,
No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025).......... 1, 9, 10, 14

*United States v. Weber*,
No. 2:25-cv-09149 (C.D. Cal. 2025) ................................ 1, 16

iv

*WildEarth Guardians v. U.S. Forest Serv.*,
    573 F.3d 992 (10th Cir. 2009) ....................................................................... 13

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991) ......................................................................... 10

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 4, cl. 1 .................................................................................. 2

## STATUTES

52 U.S.C. § 20501 ................................................................................................ 2

52 U.S.C. § 20507 ............................................................................................. 2, 3

52 U.S.C. § 21083 ................................................................................................ 3

## FEDERAL RULES

Fed. R. Civ. P. 24 ......................................................................................... *passim*

## OTHER AUTHORITIES

7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d
    ed. 2024) .................................................................................................... 12

H.R. Rep. No. 86-956 (1959) ............................................................................... 5

H.R. Rep. No. 107-329 (2001) ............................................................................. 3

**INTRODUCTION**

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Maryland last week, seeking to compel the State to turn over its complete and unredacted voter registration list, which contains sensitive and private information about every voter in Maryland. This legal assault intrudes not only upon Maryland's constitutional prerogative to maintain and protect its own voter registration list—it directly intrudes upon the privacy rights of individual Marylanders who have good reason to fear their personal information being handed over to the federal government.

Accordingly, Proposed Intervenor the Maryland/DC Alliance for Retired Americans (the "Alliance") moves to intervene in this suit to oppose the federal government's overreach, defend the privacy rights of its members, and prevent the improper disclosure of sensitive personal information to DOJ. The Alliance readily satisfies the standard for intervention as of right. *See* Fed. R. Civ. P. 24(a). In fact, multiple federal courts have allowed organizations similarly situated to the Alliance—including Michigan's chapter of the Alliance for Retired Americans—to intervene in parallel suits DOJ has brought seeking other states' voter lists. *See United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG (W.D. Mich. Dec. 9, 2025), ECF No. 45 (granting intervention as of right to Michigan Alliance for Retired Americans and registered voters); *United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025), ECF No. 52 (granting intervention as of right to civic group and registered voters); Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting two separate motions to intervene by civic groups). Like those organizations, the Alliance has a clear interest in ensuring the continued privacy of its members' personal information, and that interest could be directly impaired by this suit. And while Defendant State

Administrator DeMarinis has thus far resisted disclosure, he does not adequately represent the Alliance; as a governmental defendant, he must consider the "broader public-policy implications" of the issues presented in this suit, while the Alliance is solely concerned with protecting its members' privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)).

Alternatively, the Alliance should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Doing so will ensure that Maryland voters have a voice in this litigation, which ultimately concerns the disclosure of *their* sensitive and personal information.

## BACKGROUND

I.  **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility of determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a),

including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter registration lists, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

*See* H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the *federal government* with compiling a federal national voter registration list or micromanaging the states in their maintenance of such lists. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves—not DOJ and the federal government.

II.     **The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.**

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has sent demands to over thirty-five states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* note 1. The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ sent Maryland a letter on July 14, 2025, demanding, among other things, Maryland's "statewide voter registration list," as well as a description of Maryland's list maintenance activities. Ex. A; Compl. ¶ 22. Administrator DeMarinis responded two weeks later with an in-depth description of the state's procedures for list maintenance and accessing the state's publicly available voter registration list. Ex. B; Compl. ¶ 24.

In early August, DOJ submitted a public record request for the voter list, but Administrator DeMarinis denied the request and sought additional information from DOJ about its intended use of the data. *See* Ex. C. Ignoring Administrator DeMarinis's inquiry, DOJ reiterated its demand for

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Oct. 28, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2] *See* Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*, Stateline (Sep. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

the voter file in an August 18 letter, Ex. D, asking Maryland to produce its entire computerized statewide voter registration list with "*all fields*, which includes the registrant's full name, date of birth, residential address, and his or her state driver's license number or the last four digits of the registrant's social security number," *id.* (emphasis in original); *see also* Compl. ¶ 22.

Administrator DeMarinis responded to DOJ on August 25, refusing to produce the unredacted voter registration list "absent particularized and detailed" explanations of DOJ's need for the sensitive information. *See* Ex. E.

### III. The Department of Justice sues Maryland to obtain its complete registration list.

DOJ filed this suit on December 1, seeking to compel Maryland to provide its full statewide voter registration list. Compl. at 8. DOJ brings one claim under Section 303 of the Civil Rights Act of 1960 ("CRA") to justify its request, *id.* ¶¶ 1–3, 18, but that long-dormant Civil Rights-era law does not support DOJ's sweeping demand. The provision permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). But Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). DOJ admits that is not its purpose here; instead, it claims to be evaluating Maryland's list maintenance

efforts under NVRA and HAVA—statutes with their own separate disclosure rules and enforcement mechanisms. The Civil Rights Act is thus inapplicable.[3]

## IV.   The Alliance's members' sensitive personal information is placed in jeopardy by DOJ's demands.

The Alliance, a chartered state affiliate of the national Alliance for Retired Americans, represents over 88,000 voter-members in Maryland and the District of Columbia. Ex. F, Decl. of Roger Blacklow ("Blacklow Decl.") ¶ 5. The Alliance's mission is to ensure retirees enjoy the social and economic justice and full civil rights that they have earned after a lifetime of work. *Id.* ¶ 6. Its membership includes retirees, mostly over the age of 65, from public and private sector unions and community organizations, as well as individual activists. *Id.* ¶ 5. Many of these members are civically engaged, registered voters in Maryland whose confidential personal information—including partial Social Security numbers and full dates of birth—will be disclosed to DOJ if it prevails in its suit. *Id.* ¶ 8. These members are deeply concerned about the potential consequences if Maryland discloses their sensitive information to DOJ, both because of the potential risk of data breaches that would expose them to identify-theft or financial scams, and because of the potential for their personal information to be used in unpredictable or nefarious ways by the government, such as to undermine the electoral process in Maryland. *Id.* ¶¶ 11–12, 14.

These concerns are especially acute given that identity theft and fraud scams are frequently targeted at retirees, including those who comprise the Alliance's membership. *Id.* ¶¶ 10–11. In fact, one of the Alliance's officers, Recording Secretary Roger Blacklow, was recently a victim of

---

[3] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

identity theft, which "upended" his and his wife's lives for several months as they sorted through obtaining new computer hardware, bank accounts, and credit and debit cards, all while updating personal information for accounts across every area of their lives. *Id.* ¶¶ 12–13. Because the Alliance is invested in mitigating the risks of similar harm befalling any of its other members, it has strong interests in preventing any unauthorized disclosure of personal information, which includes defeating DOJ's efforts to access Maryland's full, unredacted voter file.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require courts to grant intervention to any movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consequently, upon filing a timely motion to intervene, *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014), the moving party must show that: "(1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n,* 646 F.2d 117, 120 (4th Cir. 1981); *see also* Fed. R. Civ. P. 24(a).

Courts also retain discretion to grant permissive intervention when a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Fourth Circuit has specified that "liberal intervention is desirable to

dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).[4]

## ARGUMENT

## I.     Proposed Intervenor is entitled to intervene as of right.

### A.     The motion to intervene is timely and will not prejudice the parties.

Proposed Intervenor's motion—filed ten days after DOJ brought suit and before any case schedule has been set—is indisputably timely. *See, e.g.*, *United States v. Cargill Meat Sols.*, No. 22-cv-1821-SAG, 2025 WL 1257931, at *1–2 (D. Md. Apr. 30, 2025) (concluding intervention motion was timely even though it was filed after final judgment); *Harris-Reese v. United States*, No. 19-cv-1971-TDC, 2021 WL 3887707, at *3 (D. Md. Aug. 31, 2021) (concluding intervention motion was timely in part because movants "expressly stated that it has no intention of interfering with the existing discovery schedule"); *Harrison v. Fireman's Fund Ins. Co.*, No. 11-cv-1258-ELH, 2011 WL 3241452, at *1 (D. Md. July 28, 2011) (concluding intervention motion was timely when it was filed before dispositive motions).

### B.     The Alliance has substantial, protectible interests that are threatened by DOJ's requested relief.

The Alliance satisfies the closely related second and third requirements for intervention because it has a significant protectible interest in this lawsuit, and the relief DOJ seeks threatens to impair those interests. *See Donaldson v. United States*, 400 U.S. 517, 531 (1971). A party satisfies the "protectible interest" standard if it "stand[s] to gain or lose by the direct legal operation of the district court's judgment" in the underlying action. *Teague v. Bakker*, 931 F.2d 259, 261

---

[4] Proposed Intervenor submits a Proposed Answer as required by Rule 24, *see* Ex. G, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

(4th Cir. 1991). The Fourth Circuit has "liberally construed" this interest requirement for intervention. *Sec. & Exch. Comm'n v. Merrill*, No. 18-cv-2844-RDB, 2020 WL 5747193, at *3 (D. Md. Sept. 25, 2020) (citing *Teague*, 931 F.2d at 261); *see also Francis v. Chamber of Com. of U.S.*, 481 F.2d 192, 195 n.8 (4th Cir. 1973) (noting that the current version of Rule 24(a) was "designed to liberalize the right to intervene in federal actions").

The Alliance has a strong interest in protecting the privacy of its members. Blacklow Decl. ¶¶ 9–15. The organization's members are predominantly senior citizens, the target demographic for many identity-theft scams. *Id.* ¶¶ 5, 10. Given the federal government's poor track record of safeguarding personal information, the Alliance has justifiable fears that its members' sensitive data will be exposed or misused if accessed by DOJ. *Id.* ¶¶ 13–15.[5] Courts regularly find that precisely these types of concerns support intervention. *See, e.g.*, *Oregon*, 2025 WL 3496571 at *1 (finding proposed intervenors have protectable privacy interests where DOJ seeks Oregon's full statewide voter registration file); *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records). Indeed, such interests are so stark that they frequently satisfy the even greater requirements for showing an Article III injury or irreparable harm. *See, e.g.*, *Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, 777 F. Supp. 3d

---

[5] For example, public reports have indicated that the Department of Government Efficiency (DOGE) placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-social-security-data.html. And just last week, the National Archives allegedly released the military records of a New Jersey gubernatorial candidate in violation of the Privacy Act, with the apparent aim of seeking to help her opponent. *See* Caroline Vakil, *Sherrill campaign slams release of military records to opponent's ally*, The Hill (Sep. 25, 2025, 5:23 PM), https://thehill.com/homenews/campaign/5522531-trump-admin-leaks-sherrill-records/.

253, 269 (S.D.N.Y. 2025) ("Several courts have . . . found standing to exist when an unauthorized third party was granted access to a plaintiff's legally protected data, due to the resulting harm's resemblance to intrusion upon seclusion."). Even though the Alliance need not establish Article III standing here, that it can likely satisfy even the "more stringent" requirement of Article III standing "compels the conclusion that [it has] an adequate interest" for purposes of Rule 24. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

Additionally, a major goal of the Alliance's civic engagement work is to encourage its members to exercise their rights as American citizens, including by participating in the electoral process. Blacklow Decl. ¶¶ 7, 9. That work will become significantly more difficult if members believe their personal information could be turned over to the federal government simply for being a registered voter. *Id.* ¶ 9. Members may opt out of participating in the political process altogether, thus undermining the Alliance's core mission. *Id.* ¶ 11. Indeed, a federal court recently held that the Michigan Alliance for Retired Americans possessed the necessary interest to intervene in DOJ's suit demanding Michigan's unredacted voter file because the Michigan Alliance's "inherent privacy interest" on behalf of its members "is implicated by the disclosures at issue." *Benson*, slip op. at 7; *see also Oregon*, 2025 WL 3496571 at * 1 (concluding, in DOJ's parallel lawsuit in Oregon, that a social welfare organization had "significant protectable interests" in the privacy of its members' personal information). And other courts across the country have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g., Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMDWGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020

WL 3074351, at *3 (E.D. Cal. June 10, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that a political party had a "legally protectable interest" because they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process"); *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding voting right interest was "a sufficient interest to satisfy Rule 24(a)(2)").

The disclosure of the Alliance's members' confidential information as a result of this litigation would plainly impair their interests. Once members' and voters' information is disclosed to DOJ, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (finding impairment when intervenor's confidential information was at risk of disclosure); *Newport News Shipbuilding & Drydock Co.*, 646 F.2d at 121 (noting that the question of impairment includes whether the proposed intervenors would suffer a "practical disadvantage or impediment"); *Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). DOJ's demand for Maryland voters' confidential information is thus antithetical to the Alliance's interest in maintaining the confidentiality of that information.

## C. The Alliance's interests are not adequately represented by existing parties.

The Alliance cannot be assured adequate representation in this matter if it is denied intervention. The "burden of showing an inadequacy of representation is minimal." *Commonwealth of Virginia v. Westinghouse Elec. Corp.,* 542 F.2d 214, 216 (4th Cir. 1976); *accord Trbovich*, 404 U.S. at 538 n.10 (explaining this requirement "should be treated as minimal"). While the Fourth Circuit has suggested that a presumption of adequacy may arise "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit," *Westinghouse Elec. Corp.*, 542 F.2d at 216, a proposed intervenor need only show that "the representation of his

interest 'may be' inadequate." *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 289 (4th Cir. 2009) (citation omitted). Courts are thus "liberal in finding" this requirement satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1909 (3d ed. 2024).

The existing parties—all government actors—do not adequately represent the Alliance's interests. DOJ naturally does not represent the Alliance's interests, as it seeks to forcibly compel production of Maryland's unredacted state voter registration list. While Administrator DeMarinis has, to date, resisted that demand, he too does not adequately represent the Alliance's specific interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "defined by the public interest, [not simply] the interests of a particular group of citizens." *JLS, Inc.*, 321 F. App'x at 290 (quoting *Feller*, 802 F.2d at 730 (alterations in original); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that government defendants are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," and the burden under such circumstances is "comparatively light"). In fact, Administrator DeMarinis has left open the possibility of producing Maryland's entire voter list to DOJ if DOJ can provide "particularized and detailed concerns" justifying such disclosure. *See* Ex. E. Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*

*v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (*quoting WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like the Alliance— seek to vindicate their own rights, "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if Administrator DeMarinis continues to oppose the relief that DOJ seeks at a high level of abstraction, it does not follow that he shares "identical" interests to civic membership organizations committed to voter engagement and turnout. *See id.*[6]

Here, Administrator DeMarinis and the Alliance do not share "identical" interests. For one, Administrator DeMarinis is obliged to enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, he has an obligation to weigh and carry out public duties that the Alliance does not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an

---

[6] It bears noting the Republican members of the Maryland State Board of Elections disagreed with Administrator DeMarinis's response to the DOJ's request. For instance, Republican member Diane Butler of the Board chastised Administrator DeMarinis's letters and labeled them as "incomplete" and "unprofessional." She also criticized Administrator DeMarinis's decision to "fight[] [with] the Justice Department instead of working with them" as "not the way that we need to be behaving." Bryan Sears, *State's Top Election Official Balks at DOJ Request for Sensitive Voter Information*, Md. Matters (Aug. 29, 2025), https://marylandmatters.org/2025/08/29/states-top-election-official-balks-at-doj-request-for-sensitive-voter-information/.

elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests). Indeed, the NVRA specifically requires state election officials to "balance competing objectives"— maintaining accurate and current voter rolls while promoting access to the ballot box—that do not pertain to the Alliance or its interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019).

On top of that, the Maryland State Board of Elections is a bipartisan body, meaning it must balance the competing views of its various members. Although the State Board of Elections is not named as a party, Administrator DeMarinis works in conjunction with the Board to administer the state's elections. Thus, that governing entity, along with the State, are heavily reliant on federal dollars to administer elections, supporting a potential "interest in bringing [this] litigation to an end by settlement[]" with DOJ. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 133 (2d Cir. 2001). In view of those circumstances, adequate representation of the Alliance's interests is hardly "assured." *Id.* The Alliance does not share these competing interests—it is focused entirely on maintaining the privacy of its members' sensitive personal information. *See Kleissler*, 157 F.3d at 973 (finding inadequate representation when government had "numerous complex and conflicting interests"). Again, just two days ago a federal court held that Michigan's Secretary of State would not adequately represent the interests of the Alliance's sister chapter in DOJ's parallel suit in that state because election officials possess "other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal government— that may ultimately induce it to stop defending the lawsuit or give up the information at issue." *Benson*, slip op. at 11; *see also Oregon*, 2025 WL 3496571 at *2 (concluding that civic organization was not adequately represented by state election officials in parallel suit because governmental entities "have obligations under the NVRA and HAVA that Proposed Intervenors

do not share and have broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenors would not make"). Ultimately, the government entities and officials on both sides of the case do not stand in the same shoes as the Alliance and thus do not sufficiently represent its interests.

## II.    Alternatively, the Alliance should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: the Alliance asserts a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). The Alliance has moved promptly, *see supra* Section I.A, and agrees to abide by any schedule set by the Court or agreed to by the original parties, meaning there will be no delay or prejudice. And the Alliance's defenses require resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. G (Proposed Answer).

Given that this action threatens to compel disclosure of personal data of millions of Maryland voters to federal officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing an organization that specifically represents the interests of *those voters* to participate. *See Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (granting intervention to movant that "offer[ed] a unique, personal and highly relevant factual perspective to the law, its development, and its impact"); *see also Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, No. 18 CIV. 11657 (ER), 2020 WL 1432213, at *8 n.9 (S.D.N.Y. Mar. 24, 2020) (explaining the "unique perspective" of people and organizations serving people "directly impacted" by challenged action would "greatly contribute to the Court's understanding of th[e] case" (citation omitted)).

It is for these reasons that courts routinely grant permissive intervention to civic organizations to ensure their voices and the voices of their members are heard when litigation

implicates the rights and privacy of all voters, notwithstanding the presence of governmental defendants ostensibly charged with upholding broader conceptions of the public interest. *See, e.g.*, Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (permitting civic organizations to intervene in DOJ suit seeking California's unredacted voter file); *League of Women Voters of N.C. v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting individual voters to intervene); *Moore v. Circosta*, No. 1:20CV911, 2020 WL 6597291, at *2 (M.D.N.C. Oct. 8, 2020) (permitting civic organization to intervene in voting rights litigation); *cf. Am. Humanist Ass'n v. Md.-Nat'l Cap. Park & Plan. Comm'n*, 303 F.R.D. 266, 270 (D. Md. 2014) (permitting veteran organization to intervene in litigation challenging the constitutionality of a local World War I memorial).

Thus, in keeping with the "liberal" standard in favor of intervention, *Feller*, 802 F.2d at 729, and because the Alliance's participation will assist rather than prejudice the efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that the Alliance may intervene as of right.

## CONCLUSION

The Court should grant the Alliance's motion to intervene.

Respectfully submitted,
Dated: December 11, 2025

*/s/ Jacob D. Shelly*

**ELIAS LAW GROUP LLP**
Uzoma N. Nkwonta*
Jacob D. Shelly (D. Md. Bar No. 30972)
Tina Meng Morrison (D. Md. Bar No. 21832)
Marcos Mocine-McQueen*
250 Massachusetts Ave NW Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
jshelly@elias.law
tmengmorrison@elias.law
mmcqueen@elias.law

* Application *pro hac vice* forthcoming

*Counsel for Proposed Intervenor-Defendant*
*the Maryland/DC Alliance for Retired*
*Americans*