**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>JARED DEMARINIS, in his Official Capacity as State Administrator of Elections for the State of Maryland,<br><br>      Defendant. | Case No. 1:25-cv-03934<br>(Hon. Stephanie A. Gallagher) |

**MOTION OF COMMON CAUSE, OUT FOR JUSTICE, INC., CARL SNOWDEN, MYRIAM PAUL, AND LUIS SIMS TO INTERVENE AS DEFENDANTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 3

    A.    DOJ's Efforts to Obtain Private Voter Information from Maryland ............................ 3

    B.    Proposed Intervenors ........................................................................................ 7

ARGUMENT ............................................................................................................... 10

I. MOVANTS ARE ENTITLED TO INTEREVENE AS A MATTER OF RIGHT. ................... 10

    A.    The Motion to Intervene Is Timely ................................................................... 11

    B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation ............ 12

    C.    Disposition of this Case May Threaten the Interests of Proposed Intervenors ........... 14

    D.    Defendant DeMarinis's Interests Are Different from Those of Proposed Intervenors. 15

II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION ................................................................................................. 18

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Alt v. Environmental Protection Agency*,
758 F.3d 588 (4th Cir. 2014) ...................................................................................11

*American Farm Bureau Federation v. Environmental Protection Agency*,
278 F.R.D. 98 (M.D. Pa. 2011) ............................................................................... 17

*Berger v. North Carolina State Conference of the NAACP*,
597 U.S. 179 (2022) ...................................................................................11, 15, 16

*Brown Investment Advisory & Trust Company v. Allen*,
No. 19-cv-2332, 2020 WL 5798365 (D. Md. Sept. 29, 2020) ................................ 18

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) .................................................................................. 14

*City of Greensboro v. Guilford County Board of Elections*,
No. 15-cv-559, 2015 WL 12752936 (M.D.N.C. Oct. 30, 2015) ............................. 19

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 4:20-cv-2078, 2020 WL 8262029 (M.D. Pa. Nov. 12, 2020)...................... 14, 20

*Donaldson v. United States*,
400 U.S. 517 (1971) ............................................................................................... 12

*Feller v. Brock*,
802 F.2d 722 (4th Cir. 1986) ...................................................................................11

*Friends of the Capital Crescent Trail v. U.S. Army Corps of Engineers*,
No. 19-cv-106, 2019 WL 3238749 (D. Md. July 18, 2019)..........................11, 15, 19

*Grutter v. Bollinger*,
188 F.3d 394 (6th Cir. 1999) .................................................................................. 15

*In re Sierra Club*,
945 F.2d 776 (4th Cir. 1991) .................................................................................. 18

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
No. 24-C-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024)................................. 16

*Judicial Watch, Inc. v. Pennsylvania*,
No. 1:20-cv-708 (M.D. Pa. Nov. 19, 2020)............................................................. 19

*Kobach v. U.S. Election Assistance Commission*,
No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ......................... 14, 17

*LaRoque v. Holder*,
755 F. Supp. 2d 156 (D.D.C. 2010)......................................................................... 14

*Makhteshim Agan of North America, Inc. v. National Marine Fisheries Service*,
No. 18-cv-0961, 2018 WL 5846816 (D. Md. Nov. 8, 2018)................................11, 18

ii

*Pennsylvania Fair Elections v. Pennsylvania Department of State*,
337 A.3d 598 (Pa. Commw. Ct. 2025) ................................................................ 6

*Public Interest Legal Foundation, Inc. v. Winfrey*,
463 F. Supp. 3d 795 (E.D. Mich. 2020) ............................................................... 14

*Stuart v. Huff*,
706 F.3d 345 (4th Cir. 2013) ........................................................................... 11, 18

*Teague v. Bakker*,
931 F.2d 259 (4th Cir. 1991) ........................................................................... 12, 15

*Texas v. United States*,
798 F.3d 1108 (D.C. Cir. 2015) ........................................................................... 14

*Thomas v. Andino*,
335 F.R.D. 364 (D.S.C. 2020) ............................................................................. 19

*Tirrell v. Edelblut*,
No. 24-cv-251, 2025 WL 1939965 (D.N.H. July 15, 2025) ................................. 19

*T-Mobile Northeast LLC v. Town of Barnstable*,
969 F.3d 33 (1st Cir. 2020) ................................................................................. 16

*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972) ............................................................................................ 15

*United States v. Cargill Meat Solutions*,
No. 22-cv-1821, 2025 WL 1257931 (D. Md. Apr. 30, 2025) ............................... 11

*Vadial Industries USA, Inc. v. Singh Trading Co. Inc.*,
No. 25-cv-2028, 2025 WL 2374692 (D. Md. Aug. 14, 2025) ......................... 11, 18

**Statutes**

5 U.S.C. § 552a ...................................................................................................... 12

52 U.S.C. § 20703 .......................................................................................... 15, 17

52 U.S.C. § 20704 .................................................................................................... 4

Md. Code Ann., Elec. Law § 3-101 ....................................................................... 12

Md. Code Ann., Elec. Law § 3-506 ....................................................................... 12

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, NEW YORK TIMES, Oct. 22, 2025 .......................................................... 6

Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024 ............................. 6

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PENNSYLVANIA, Nov. 8, 2024 ................................................................. 6

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, NEW YORK TIMES, Sept. 9, 2025 ....................................................................... 5

Doug Bock Clark, She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security, PROPUBLICA, Aug. 26, 2025 ...................................... 6

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, NEW YORK TIMES MAGAZINE, Nov. 16, 2025 ................................................................................. 5

Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NATIONAL PUBLIC RADIO, Nov. 5, 2024 ........................................... 7

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PENNSYLVANIA CAPITAL-STAR, Aug. 27, 2025 .................................... 6

Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILADELPHIA INQUIRER, Nov. 1, 2024 ........................................................................................ 6

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025 ................................................................................................ 5, 7

Jonathan Shorman, *Trump's DOJ Wants State to Turn Over Voter Lists, Election Info*, STATELINE, July 16, 2025 ............................................................................................ 7

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NATIONAL PUBLIC RADIO, June 29, 2025 ....................................... 6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (updated Dec. 5, 2025) ............. 3

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025 .......................................................................... 6

Press Release, U.S. Department of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025) .................................... 4

Press Release, U.S. Department of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025) ............. 4

Press Release, U.S. Department of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025) ...................................... 4

Press Release, U.S. Department of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025) ..................................................... 4

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025 ............................................................... 5

**Rules**

Fed. R. Civ. P. 24 ......................................................................................................... 1

Fed. R. Civ. P. 24(c) ..................................................................................................... 1

L.R. 105(1) .................................................................................................................. 1

**Regulations**

Md. Code Regs. 33.04.01.07-1 ................................................................................... 12

Common Cause, Out for Justice, Inc. ("Out for Justice"), Carl Snowden, Myriam Paul, and Luis Sims (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and set forth the legal argument necessary to support their motion below. *See* L.R. 105(1). Proposed Intervenors append to this motion a proposed motion to dismiss by way of a response to the United States' Complaint, while reserving the right to supplement their response to the Complaint within the time allowed for response by Rule 12 after intervention is granted. *See* Fed. R. Civ. P. 24(c).

## INTRODUCTION

The United States seeks to force Maryland to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement. These efforts are being driven by self-styled "election-integrity" advocates who have previously used ill-conceived database-matching and database-analysis methods to mass-challenge voters and deny the results of elections, and who now serve in or advise the present Administration.

Proposed Intervenors are Common Cause and Out for Justice, non-partisan, non-profit organizations dedicated to grassroots voter engagement and protecting voting rights and civil rights in Maryland, whose own work and whose members' rights are at risk by the relief sought by the United States in this case, as well as Mr. Snowden, Ms. Paul, and Mr. Sims, individual voters whose personal, private data is at risk in this litigation. Proposed Intervenors have an extremely strong interest in preventing the United States' requests for unfettered and total access to the most sensitive aspects of Maryland's non-public voter data from being used to harass and potentially disenfranchise voters. Common Cause works to expand access to the ballot and civic engagement,

as well as to protect civil liberties, and thus have an interest in protecting the voting and privacy rights of their members and all Maryland voters. Similarly, Out for Justice works to expand civic engagement and voting rights for Marylanders, with a specific focus on support for those returning to the electorate following service of incarceration. This grassroots, volunteer-led work engaging voters is threatened by the United States' request for sensitive, non-public voter data, which risks discouraging Marylanders from registering to vote. And the interests of Mr. Snowden, Ms. Paul, and Mr. Sims, as well as the members of Common Cause and Out for Justice, are also at stake here. Those members include voters who are under particular threat from the United States' requested form of relief, such as voters like Ms. Paul who are naturalized citizens, voters like Mr. Sims who have a felony conviction, voters who have previously been registered to vote in another state, voters who registered to vote by mail, and voters whose personal information is especially sensitive and who thus have heightened privacy interests.

Proposed Intervenors are entitled to intervene as of right under Rule 24 because this motion is timely, because both their rights and interests are at stake, and because those rights and interests are not adequately represented by the existing Defendant, who unlike Proposed Intervenors, is a state actor, subject to broader public policy and political considerations external to the legal issues presented in this case. Their unique interests in this case, their unique perspective, and their unique motivation to interrogate the purpose of the United States' sweeping request for non-public Maryland voter data will ensure the full development of the record here and aid the Court in its resolution of this case. Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

## BACKGROUND

### A.   DOJ's Efforts to Obtain Private Voter Information from Maryland

Beginning in May 2025, Plaintiff the United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 5, 2025), https://perma.cc/A73C-8YDZ. On July 14, 2025, it sent such a letter to Defendant DeMarinis, Maryland's State Administrator of Elections, demanding, among other things, "[t]he current electronic copy of Maryland's computerized statewide voter registration list." *See* Letter from Michael E. Gates, Deputy Assistant Att'y Gen., U.S. Dep't of Just., to Hon. Jared DeMarinis (July 14, 2025), Dkt. No. 2-2, ("July 14 Letter"), at 2–5. Defendant DeMarinis responded on July 30, 2025, setting out the process under Maryland law for procuring the statewide voter registration list and referring the DOJ to the state's website for doing so. *See* Letter from Hon. Jared DeMarinis to Maureen Riordan, Acting Chief, Voting Section & Michael E. Gates (July 30, 2025), Dkt. No. 2-2, at 7–11. On August 13, 2025—in response to an apparent request for Maryland's voter registration list from the DOJ—Defendant DeMarinis requested that the DOJ "share the Department's purpose in creating [a system] of records" of Maryland voters, and why the "public voter registration list requested is necessary and relevant to that purpose," as required under federal law. *See* Letter from Hon. Jared DeMarinis to Maureen Riordan & Michael E. Gates (Aug. 13, 2025), Dkt. No. 2-2, at 13–14.

On August 18, 2025, the DOJ responded to Defendant DeMarinis, demanding that Maryland provide to the DOJ its complete, non-public voter database. *See* Letter from Harmeet K. Dhillon, Assistant Att'y Gen., U.S. Dep't of Just., to Hon. Jared DeMarinis (Aug. 18, 2025), Dkt.

No. 2-2 ("August 18 Letter"), at 16–18. DOJ specifically requested private voter information, including registrants' full name, date of birth, address, driver's license number and the last four digits of the registrant's social security number ("SSN4"). *Id.* at 16. It waved away any privacy issues, claiming that the federal prohibition on sharing voter information obtained under the Civil Rights Act of 1960 with the public was sufficient to assuage concerns. *See id.* at 17 (citing 52 U.S.C. § 20704).

Defendant DeMarinis responded on August 25, 2025. *See* Letter from Hon. Jared DeMarinis to Harmeet K. Dhillon & Maureen Riordan (Aug. 25, 2025), Dkt. No. 2-2, at 20–22. His letter noted that the DOJ did not respond to the questions posed about its purpose for procuring a list of Maryland's voters and why the list was necessary and relevant for that purpose. *Id.* The United States responded by filing this lawsuit, which is one of at least eighteen that DOJ has initiated recently against states and their top election officials, seeking to compel them to hand over this sensitive voter data.[1]

Notably, according to public reporting, DOJ's request for private, sensitive voter data from Maryland and other states appears to be in connection with novel efforts by the United States to construct a national voter database, and to otherwise use untested forms of database analysis in order to scrutinize state voter rolls. According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick

---

[1] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating in these unprecedented efforts with the federal Department of Homeland Security (DHS). *Id.*; Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security ("Shorman, *DOJ Sharing Lists with Homeland Security*"); Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09. One recent article extensively quoted a recently departed lawyer from DOJ's Civil Rights Division, describing DOJ's aims in this case and others like it:

> "We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.").

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

According to additional public reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside government who have previously sought to disenfranchise voters and overturn elections. Those advocates include Heather Honey, who sought to overturn the result of the 2020 presidential election in multiple

states and now serves as DHS's "deputy assistant secretary for election integrity."[2] Also involved is Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network," who has promoted the use of artificial intelligence to challenge registered voters.[3] These actors, including some associated with Ms. Honey, have previously sought to compel states to engage in aggressive purges of registered voters, and have abused voter data to mass challenge and attempt to disenfranchise voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Honey challenging Pennsylvania's voter roll maintenance practices pursuant to the federal Help America Vote Act, was meritless).[4]

---

[2] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://www.propublica.org/article/heather-honey-dhs-election-security.

[3] *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

[4] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); *see also* Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html

DOJ's actions also indicate that it may focus on or target specific groups of voters in its use of the requested data. In its letters to Maryland and other States requesting the same private voter data, the DOJ also requested information about how elections officials, among other things, process applications to vote by mail; identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, such as due to a felony conviction or lack of citizenship.[5] *See* July 14 Letter. The Administration has also confirmed that it was sharing the requested information with the DHS. *See* Jonathan Shorman, *Trump's DOJ Wants State to Turn Over Voter Lists, Election Info*, STATELINE, July 16, 2025, https://stateline.org/2025/07/16/trumps-doj-wants-states-to-turn-over-voter-lists-election-info/ (characterizing letters in nine states); Shorman, *DOJ Sharing Lists with Homeland Security*.

### B. Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Maryland voters register to vote and exercise their right of suffrage at each election. *See* Ex. B, Decl. of Common Cause Maryland Executive Director Joanne Antoine ("Antoine Decl.") ¶¶ 3, 5–7. Common Cause specifically has worked to protect voter privacy in

---

(noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).

[5] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

Maryland, including working for regulations to secure proper storage of voter data. *Id.* ¶ 8. Common Cause expends significant resources conducting on-the-ground voter engagement and assistance efforts, including registering qualified individuals to vote, helping voters navigate the vote-by-mail process, encouraging voters to participate, and assisting voters when they experience problems in trying to vote. Antoine Decl. ¶¶ 10–11. The success of these efforts, especially with respect to voter registration, depend on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored. Antoine Decl. ¶¶ 11, 13.

Common Cause has more than 18,000 members in Maryland. Antoine Decl. ¶ 4. Those members include Maryland voters whose personal data will be provided to the federal government if DOJ prevails in this lawsuit, as well as voters who are likely to be caught up in the DOJ's efforts to remove voters from voter rolls, whether because they have a supposed "duplicate" record in the system, are registered to vote by mail, have a felony conviction, and/or are naturalized citizens. *See* Antoine Decl. ¶ 4. They also may include voters whose identifying information is particularly important to keep private, due to their particular status as crime victims, public officials, or due to some other heightened need for privacy. *See* Antoine Decl. ¶¶ 4, 11.

Proposed Intervenor Out for Justice, Inc. is a nonpartisan, non-profit grassroots organization committed to supporting justice-involved individuals in Maryland, including by ending employment barriers and reducing collateral consequences associated with a criminal record. *See* Ex. C, Decl. of Out for Justice, Inc. Executive Director Trina Selden ("Selden Decl.") ¶¶ 3, 6–7. One of Out for Justice's core strategic priorities is voter registration and voter engagement with system-impacted Marylanders, including doing voter registration drives, phone banking, hosting civic engagement events, and assisting eligible incarcerated voters. *Id.* ¶¶ 11–13.

Out for Justice is a membership organization, and its members include many Marylanders who have been incarcerated. *Id.* ¶ 8. Out for Justice has worked extremely hard to increase its members' trust in government and the democratic process and voter engagement among system-impacted voters in Maryland. *Id.* ¶ 18. Out for Justice believes that disclosure of the unredacted voter file would gravely harm its members by invading their privacy, creating a chilling effect on political participation, and undermining their confidence in Maryland elections. *Id.* ¶ 10. It would also harm the organization's core mission of improving voter and civic engagement among its membership. *Id.* ¶¶ 18–19.

Proposed Intervenor Carl Snowden is a former elected and appointed government official, civil rights activist and leader, founder and current Convener of the Caucus of African American Leaders ("CAAL"), and registered Maryland voter. *See* Ex. D, Decl. of Carl Snowden ("Snowden Decl.") ¶¶ 2–3. When he was aged 16 through 24, the Federal Bureau of Investigation placed Mr. Snowden under surveillance as part of its unlawful COINTELPRO program because of his civil rights advocacy; Mr. Snowden later won a settlement related to the unlawful surveillance. *Id.* ¶ 4. Mr. Snowden was elected an Annapolis City Alderman and served in Anne Arundel County government before being appointed Maryland's first-ever Director of Civil Rights, where he worked on protecting Marylanders' voting rights. *Id.* ¶¶ 5–6. Particularly as a Maryland voter who had his privacy rights violated by the federal government, "the DOJ effort to secure [his] private voting information . . . concerns [Mr. Snowden] deeply." *Id.* ¶ 9. Mr. Snowden is also concerned about the privacy and voting rights of CAAL members and constituents, some of whom include new Maryland residents, naturalized citizens, and returning citizens newly involved in the democratic process. *Id.* ¶ 10.

Proposed Intervenor Myriam Paul is a registered Maryland voter and has lived in the state for nine years. *See* Ex. E, Decl. of Myriam Paul ("Paul Decl.") ¶ 4. Ms. Paul is currently the Assistant Director of Sponsored Projects at the College of Information at the University of Maryland, College Park. Born in Haiti, Ms. Paul moved to the United States at 13 years old and became a naturalized citizen 20 years ago. *Id.* ¶¶ 2–3. Since that time, she has consistently exercised her right to vote and has encouraged others in her community to do the same and have their voice heard. *Id.* ¶ 3. Ms. Paul is deeply concerned about the prospect of having her sensitive, personal information disclosed to the DOJ. *Id.* ¶ 5. Ms. Paul believes that voting is a sensitive and private process, and the DOJ's request for this data does not just harm her own personal privacy and liberties, but those of other Maryland voters. *Id.* ¶ 6.

Proposed Intervenor Luis Sims is an Army veteran and Maryland voter who resides in Baltimore City. *See* Ex. F, Decl. of Luis Sims ("Sims Decl.") ¶ 2. Mr. Sims returned home after being incarcerated for a felony conviction since 1991. *Id.* ¶¶ 2–3. Mr. Sims endured poor conditions and undue surveillance while incarcerated. *Id.* ¶ 5. Now that he has had his right to vote restored, Mr. Sims is extremely eager to rejoin the political process. *Id.* ¶ 7. But he is deeply concerned about DOJ's request for his personal data, which he fears could make him a target particularly due to his previous felony conviction. *Id.* ¶ 6. Mr. Sims worries that DOJ's request could undermine his right to vote. *Id.*

## ARGUMENT

## I.    MOVANTS ARE ENTITLED TO INTEREVENE AS A MATTER OF RIGHT.

Proposed Intervenors are entitled to intervene as of right. Rule 24(a)(2):

> provides that a court must permit anyone to intervene who, (1) on timely motion, (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, (3) unless existing parties adequately represent that interest.

10

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (internal quotation marks and alterations omitted); *see also Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). "[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal citation and quotation marks omitted). Because the Proposed Intervenors easily meet Rule 24(a)'s requirements, Court should grant their intervention as a matter of right.

### A.    The Motion to Intervene Is Timely

"When considering timeliness, courts consider three factors: 'first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion.'" *Friends of the Cap. Crescent Trail v. U.S. Army Corps of Eng'rs*, No. 19-cv-106, 2019 WL 3238749, at *2 (D. Md. July 18, 2019) (quoting *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014)). "The most important circumstance relating to timeliness is whether the intervening party seeks to intervene as soon as it became clear that its interests would no longer be protected by the parties in the case." *United States v. Cargill Meat Solutions*, No. 22-cv-1821, 2025 WL 1257931, at *1 (D. Md. Apr. 30, 2025) (internal quotation marks, citations, and alterations omitted).

This motion is indisputably timely. The United States filed this suit on December 1, 2025, and the case was reassigned to this Court on December 2, 2025. Upon receiving notice of the suit, the Proposed Intervenors promptly prepared this motion. *See Vadilal Indus. USA, Inc. v. Singh Trading Co. Inc.*, No. 25-cv-2028, 2025 WL 2374692, at *7 (D. Md. Aug. 14, 2025) (holding "there can be no genuine dispute that [intervenor's] motion to intervene is timely" when motion was filed "less than two weeks" after complaint); *Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. 18-cv-0961, 2018 WL 5846816, at *3 n.3 (D. Md. Nov. 8, 2018) (holding

intervention motion was timely when filed "about seven weeks" after complaint). Defendant DeMarinis has not yet filed an answer or a motion to dismiss, meaning that this litigation is at its earliest stages and intervention will not unduly delay or prejudice the existing parties.

**B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation**

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). An intervenor has an interest in the subject matter of the action where the intervenor "stand[s] to gain or lose by the direct legal operation of the district court's judgment" in the underlying action. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, Mr. Snowden, Ms. Paul, Mr. Sims, and the Proposed Intervenors' members have a right to privacy in the sensitive voter data the United States seeks. The August 18 Letter demanded that Defendant DeMarinis turn over voters' full name, date of birth, residential address, and driver's license number or SSN4. August 18 Letter at 16. This type of sensitive personal information is protected from disclosure by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly seeking to assemble with the data it seeks. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). It is also protected from disclosure by state law, which states that "[a] personal identification number is not subject to public disclosure and may be used only for voter registration purposes." Md. Code Regs. 33.04.01.07-1; *see also* Md. Code Ann., Elec. Law §§ 3-101, 3-506. These privacy interests are significant and inure to Mr. Snowden, Ms. Paul, Mr. Sims, and to each of the organizational Proposed Intervenors' members who are Maryland voters. Moreover, certain members have

additional privacy interests in preventing the disclosure of their personal information because of their status as crime victims, public officials, or some other sensitive designation. *See, e.g.*, Antoine Decl. ¶¶ 4, 11.

*Second*, and based on DOJ's similar data requests to other States, the data DOJ seeks is likely to be used to challenge the voter registration of certain Marylanders, including voters with felony convictions like Mr. Sims; voters who have moved within Maryland or left the state and then returned to Maryland (but might be deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system); voters like Ms. Paul who are naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization); and voters who vote by mail. *See supra* 4–7 & nn.2–4. Ms. Paul, Mr. Sims, and Common Cause and Out for Justice members fall within those categories. Antoine Decl. ¶¶ 4, 11; Selden Decl. ¶ 8; *see also* Paul Decl. ¶ 3; Sims Decl. ¶ 2. Mr. Snowden, Ms. Paul, Mr. Sims, and Proposed Intervenors' members, especially those most likely to be targeted using the information DOJ seeks in this lawsuit, have a concrete interest in not being disenfranchised by so-called "election integrity measures." *See* Snowden Decl. ¶ 9; Sims Decl. ¶¶ 6–8; Paul Decl. ¶¶ 5–6.

*Third*, Common Cause and Out for Justice have protectable interests at stake because their core organizational missions will be harmed if the relief sought is granted. For one, their voter registration activities will be harmed because voters will be chilled from registering and participating if they believe their sensitive personal data will be provided to the federal government (and ingested into an unauthorized and illegal national database). Antoine Decl. ¶¶ 10–11; Selden Decl. ¶¶ 10, 18–21. Moreover, these organizations will be further harmed if and when the sensitive voter data sought by the United States is then used to engage in mass challenges of registered voters by "election integrity" activists wielding the power of the federal government. Such mass

13

challenges will force organizational Proposed Intervenors to redirect resources to educating the public about threats to voting rights and mitigating the disenfranchisement of existing voters, and away from their core activities of registering voters and engaging new voters in the democratic process. Antoine Decl. ¶¶ 11–12. Courts routinely find that non-partisan public interest organizations, like the organizational Proposed Intervenors, should be granted intervention in election-related cases, demonstrating the significantly protectable interests such organizations have in safeguarding the electoral process. *See, e.g.*, *Texas v. United States*, 798 F.3d 1108, 1111–12 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013); *LaRoque v. Holder*, 755 F. Supp. 2d 156, 162 n.3 (D.D.C. 2010), *rev'd in part on unrelated grounds*, 650 F.3d 777 (D.C. Cir. 2011). This case is no exception. Indeed, in a similar case brought by the Department of Justice challenging California's refusal to turn over sensitive voter information, such organizations were granted intervention. *See* Order, *United States v. Weber*, No. 25-cv-09149, Dkt. No. 70 (C.D. Cal. Nov. 19, 2025); *see also* Op. & Order, *United States v. Oregon*, No. 25-cv-01666, Dkt. No. 52 (D. Or. Dec. 5, 2025) (granting intervention in Oregon case).

### C.    Disposition of this Case May Threaten the Interests of Proposed Intervenors

The Proposed Intervenors also satisfy the third prong of the intervention analysis because the litigation may result in an order that directly affects their interests. To satisfy Rule 24(a)(2)'s interest impairment prong, intervenors "do not need to establish that their interests *will* be impaired. Rather, they must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014)

(internal citations omitted). "This burden is minimal." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (internal quotation marks and citation omitted).

Here, the threat is significant. The United States proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* U.S. Mot. to Compel Production of Documents, Dkt. No. 2. This attempt to secure the irrevocable disclosure of private voter data to actors who may misuse it in any number of ways, including by mass-challenging or otherwise attacking Marylanders' right to vote, at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests now.

### D. Defendant DeMarinis's Interests Are Different from Those of Proposed Intervenors.

"Under Rule 24(a)(2), once an intervenor has satisfied the three criteria for mandatory intervention, the burden of persuasion shifts such that intervention is mandatory, unless the court is persuaded that the representation is in fact adequate." *Friends of the Cap. Crescent Trail*, 2019 WL 3238749, at *2 (internal quotations and citations omitted). "[T]he burden on the applicant of demonstrating a lack of adequate representation 'should be treated as minimal.'" *Teague*, 931 F.2d at 262 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *see also Berger*, 597 U.S. at 195 (noting that "[the Supreme] Court has described the Rule's test as presenting proposed intervenors with only a minimal challenge."). Proposed Intervenors need not show that representation of their interests *will* be inadequate, but rather only that "representation [of their interests] *may be* inadequate." *Trbovich*, 404 U.S. at 538 n.10.

Proposed Intervenors meet this minimal burden here. As a government official, Defendant DeMarinis has a generalized interest in carrying out his office's legal obligations under federal and

state laws, and in minimizing burdens on governmental employees and resources. He also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors will "add [a] missing element" to this litigation, making the existing representation inadequate: the perspective of civil rights groups whose sole commitment is to ensuring access to the ballot and the perspective of individual voters whose very own private information is at risk. *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020). There may be arguments and issues that the Defendant may not be able or willing to raise that are critical to Proposed Intervenors. For example, individual voters have a more direct injury than states under the Privacy Act for misuse of their personal data, especially given that the Privacy Act grants individuals an express right to bring suit. *See* 5 U.S.C. § 552a(g)(1)(D) ("Whenever an agency fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"). As another example, courts have found a risk that political considerations external to the legal issues presented by case like this can motivate elections officials to pursue a settlement that would jeopardize the private information of Mr. Snowden, Ms. Paul, Mr. Sims, and/or Common Cause or Out for Justice members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger*, 597 U.S. at 198 (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and the Proposed Intervenors' personal and particular interest in the privacy of their own data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders); *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of an elections agency).

While Proposed Intervenors' motion rises or falls on its own merit, they bring a different set of perspectives and interests than the other proposed intervenors in this case. Proposed Intervenors here include specific Maryland voters—Mr. Snowden, Ms. Paul, and Mr. Sims—who have unique experiences not reflected by the other proposed intervenors, including being previously subject to federal government surveillance, *see* Snowden Decl. ¶ 4, and falling within several categories of particularly vulnerable voters identified in DOJ's requests to Maryland, such as voters with felony convictions, *see* Sims. Decl. ¶¶ 2–3, 7; Selden Decl. ¶¶ 6–8, 16–18, 21; and naturalized citizens, *see* Paul Decl. ¶¶ 3, 5. These perspectives are essential to this litigation and vindicating the rights of Proposed Intervenors.

Moreover, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they will be used to create an unauthorized national database as has been reported, and whether they are a prelude to mass

17

challenges based on faulty data-matching techniques, are highly relevant and potentially dispositive here. Proposed Intervenors' unique interest as good-government, pro-democracy organizations in pursuing this highly relevant line of factual inquiry and argument is further strong grounds to support intervention.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

If the Court declines to grant intervention as of right, it should grant permissive intervention under Federal Rule of Civil Procedure 24(b). Rule 24(b) "provides that a district court 'may permit' intervention if the applicant has 'a claim or defense that shares with the main action a common question of law or fact.'" *Stuart*, 706 F.3d at 355 (quoting Fed. R. Civ. P. 24(b)(1)(B)). "Rule 24(b) notes that in 'exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) (quoting Fed. R. Civ. P. 24(b)(3)). Other factors that courts often evaluate include "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Brown Inv. Advisory & Tr. Co. v. Allen*, No. 19-cv-2332, 2020 WL 5798365, at *3 (D. Md. Sept. 29, 2020) (quotations omitted).

Permissive intervention is appropriate here. As discussed above, this motion is timely, coming shortly after the case began and prior to any discovery or motion practice. *See Vadilal Indus. USA, Inc.*, 2025 WL 2374692, at * 7; *Makhteshim Agan of N. Am., Inc.*, 2018 WL 5846816, at 3 n.3. Because Proposed Intervenors seek to join the case at the beginning, their involvement runs no risk of delaying proceedings. *See Friends of the Cap. Crescent Trail*, 2019 WL 3238749,

at *3 (noting motion to intervene was appropriate a month after defendant filed its answer to the complaint "and before any dispositive motions had been filed or discovery completed.").

Moreover, Proposed Intervenors' defense goes directly to the issues already presented in this lawsuit, such as (1) whether federal law permits the United States to force Maryland to give it the personal information it seeks; (2) whether legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. Proposed Intervenors' distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it. Proposed Intervenors "do not propose to add new issues to the litigation"; instead, they are trying to offer their unique perspective to resolve the existing ones. *City of Greensboro v. Guilford Cnty. Bd. of Elections*, No. 15-cv-559, 2015 WL 12752936, at *1 (M.D.N.C. Oct. 30, 2015). As noted above, Proposed Intervenors provide the unique perspective of specific Maryland voters, as well as vulnerable voters specifically named in the DOJ's requests, such as voters with felony convictions and naturalized citizens. *See supra* Section I.D.

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020) (granting permissive intervention to state political party in challenge related to election laws); *Tirrell v. Edelblut*, No. 24-cv-251, 2025 WL 1939965, at *4 (D.N.H. July 15, 2025) (allowing "a membership-based organization that represents cisgender athletes" to intervene as a defendant in a suit challenging state restrictions on transgender athletes); *Judicial Watch, Inc. v. Pennsylvania*, No. 20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 at 3 (granting permissive intervention in NVRA case to Common Cause and

League of Women Voters of Pennsylvania upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (internal quotation marks, citation, and footnote omitted)); *Donald J. Trump for President, Inc.*, 2020 WL 8262029, at *1 (granting Rule 24(b) motion where voters and organizations "have an interest in the constitutionality of Pennsylvania's voting procedures, which goes to the heart of Plaintiffs' action" (internal quotation marks and citation omitted)). This Court should do the same here.

## CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendants as of right, or in the alternative, via permissive intervention.

Dated: December 12, 2025

Respectfully submitted,

/s/ Deborah A. Jeon

Jonathan Topaz*                              Deborah A. Jeon (Bar No. 06905)
Theresa J. Lee*                               Dara Johnson (Bar No. 31478)
Sophia Lin Lakin*                            AMERICAN CIVIL LIBERTIES UNION OF MARYLAND
AMERICAN CIVIL LIBERTIES UNION FOUNDATION    3600 Clipper Mill Road
125 Broad Street, 18th Floor                 Suite 200
New York, NY 10004                           Baltimore, MD 21211
Tel.: (212) 549-2500                         Tel. 410-889-8555
jtopaz@aclu.org                              jeon@aclu-md.org
tlee@aclu.org                                djohnson@aclu-md.org
slakin@aclu.org

* application for admission pro hac vice
forthcoming

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 12, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record and by email on counsel for the United States and Defendant DeMarinis.

/s/ Deborah A. Jeon