# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      *Plaintiff*,<br><br>      *v.*<br><br>JARED DEMARINIS, *in his official capacity as the State Administrator of Elections for the State of Maryland*,<br><br>      *Defendant*. | Case No. 1:25-cv-03934-SAG |

## MARYLAND/DC ALLIANCE FOR RETIRED AMERICANS' PROPOSED MOTION TO DISMISS

Proposed Intervenor-Defendant Maryland/DC Alliance for Retired Americans moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the supporting memorandum filed alongside this Motion, Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**WHEREFORE**, Proposed Intervenor-Defendant requests that the Court dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,                    Dated: January 30, 2026

                                           */s/ Uzoma N. Nkwonta*
                                           Uzoma N. Nkwonta*
                                           Jacob D. Shelly (D. Md. Bar No. 30972)
                                           Tina Meng Morrison (D. Md. Bar No. 21832)
                                           Marcos Mocine-McQueen*
                                           **ELIAS LAW GROUP LLP**
                                           250 Massachusetts Ave NW Suite 400
                                           Washington, D.C. 20001
                                           Telephone: (202) 968-4490
                                           unkwonta@elias.law
                                           jshelly@elias.law
                                           tmengmorrison@elias.law
                                           mmcqueen@elias.law

                                           * Admitted *pro hac vice*

                                           *Counsel for Proposed Intervenor-Defendant*
                                           *the Maryland/DC Alliance for Retired*
                                           *Americans*

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| *v.* | Case No. 1:25-cv-03934-SAG |
| JARED DEMARINIS, *in his official capacity as the State Administrator of Elections for the State of Maryland*, | |
| *Defendant*. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MARYLAND/DC ALLIANCE FOR
RETIRED AMERICANS' PROPOSED MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

I.      Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ................................................... 3

II.     The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter data held by the states. .................................. 4

III.    The Department of Justice filed suit to obtain Maryland's voter registration records. .................................................................................................................. 6

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ..................................................................................................................... 7

I.      DOJ failed to satisfy Title III's threshold requirements of stating a valid "basis" and "purpose" for its demand. ........................................................................... 8

     A.     DOJ did not provide any statement of the "basis" for its demand. .......................... 11

     B.     DOJ did not provide a proper "purpose" for its demand. ....................................... 13

II.     Title III does not pre-empt Maryland's privacy protections. ............................................ 14

III.    DOJ has failed to comply with the Privacy Act, which independently requires dismissal. ................................................................................................................ 18

CONCLUSION .................................................................................................................. 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alabama ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) ....................................................... 13

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
  778 F. Supp. 3d 685 (D. Md. 2025) ...................................................... 21

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) ................................................................................. 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 7

*Atl. Coast Pipeline, LLC v. Nelson Co. Bd. of Supervisors*,
  443 F. Supp. 3d 670 (W.D. Va. 2020) ................................................. 15

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
  854 F.3d 683 (D.C. Cir. 2017) ........................................................... 8, 9

CFPB v. Source for Pub. Data, L.P.,
  903 F.3d 456, 458 (5th Cir. 2018) ......................................................... 8

*Foster v. Love*,
  522 U.S. 67 (1997) ................................................................................. 3

*Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*,
  734 F.3d 296 (4th Cir. 2013) ............................................................... 10

*Giarratano v. Johnson*,
  521 F.3d 298 (4th Cir. 2008) ................................................................. 7

*Harts v. Calvert Cnty. Sheriff*,
  No. 8:22-cv-03192-BAH, 2024 WL 944321 (D. Md. Mar. 5, 2024) ...... 11

*Home Depot U.S.A., Inc. v. Jackson*,
  587 U.S. 435 (2019) ............................................................................ 10

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018) .......................................................................... 3, 4

*In re Admin. Subpoena No. 25-1431-019*,
  800 F. Supp. 3d 229 (D. Mass. 2025) ............................................. 9, 14

ii

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962) ........................................................ 11

*In re Subpoena No. 25-1431-014*,
    No. 2:25-mc-00039-MAK, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025)........................... 8, 14

*Jud. Watch, Inc. v. Lamone*,
    399 F. Supp. 3d 425 (D. Md. 2019) ........................................................ 16

*Kennedy v. Bruce*,
    298 F.2d 860 (5th Cir. 1962)............................................................ 11

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962)............................................... 6, 10, 11, 16

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
    No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ............................. 18, 19, 20

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*,
    780 F.3d 582 (4th Cir. 2015)............................................................. 7

*N. Va. Hemp & Agric., LLC v. Virginia*,
    125 F.4th 472 (4th Cir. 2025) ........................................................... 15

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999)............................................................ 11

*Pippinger v. Rubin*,
    129 F.3d 519 (10th Cir. 1997) .......................................................... 21

*Project Vote, Inc. v. Kemp*,
    208 F. Supp. 3d 1320 (N.D. Ga. 2016) ................................................... 17

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012)............................................................ 16

*Project Vote/Voting For Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010)..................................................... 17

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ............................................................. 15

*Pub. Int. Legal Found., Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022).................................................... 17

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021)............................................................ 16

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
   120 F.4th 390 (4th Cir. 2024)...........................................................................3

*Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*,
   4 F.3d 244 (4th Cir. 1993)..............................................................................21

*Rouse v. Moore*,
   724 F. Supp. 3d 410 (D. Md. 2024)................................................................12

*Tarrant Reg'l Water Dist. v. Herrmann*,
   656 F.3d 1222 (10th Cir. 2011)......................................................................15

*True the Vote v. Hosemann*,
   43 F. Supp. 3d 693 (S.D. Miss. 2014)............................................................17

Minute Entry, *United States v. Oregon*,
   No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026), ECF No. 68.......................2

*United States v. State of Ala.*,
   192 F. Supp. 677 (M.D. Ala. 1961)................................................................10

*United States v. Ward*,
   349 F.2d 795 (5th Cir.)...................................................................................10

*United States v. Wayda*,
   966 F.3d 294 (4th Cir. 2020)............................................................................8

*United States v. Weber*,
   No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ................ *passim*

*Util. Air Regul. Grp. v. EPA*,
   573 U.S. 302, 321 (2014)................................................................................10

*Voter Reference Found., LLC v. Torrez*,
   160 F.4th 1068 (10th Cir. 2025)................................................................16, 18

**Constitutional Provisions and Statutes**

U.S. Const. art. I, § 4, cl. 1............................................................................2, 3

5 U.S.C. § 552a...................................................................................18, 19, 21

52 U.S.C. § 20501(b)..............................................................................................3

52 U.S.C. § 20507(a)......................................................................................3, 17

52 U.S.C. § 20703...........................................................................8, 12, 15, 16

52 U.S.C. § 21083(a).....................................................................................4, 18

52 U.S.C. § 20701 ........................................................................................................... 6

52 U.S.C. § 21085 ...................................................................................................... 4, 13

MD Code Ann., Gen. Provisions § 4-330 ....................................................................... 1

MD Code Ann., State Gov't § 10-1301(c)(1) ............................................................... 14

**Regulations and Rules**

82 Fed. Reg. 24147 (May 25, 2017) ............................................................................. 20

MD Code Regs. 02.06.01.17 ..................................................................................... 1, 14

MD Code Regs. 33.05.02.02(B)(5) .............................................................................. 14

*Privacy Act of 1974; System of Records,* 68 Fed. Reg. 47610 (Aug. 11, 2003) ........... 20

*Privacy Act of 1974; System of Records,* 70 Fed. Reg. 43904 (July 20, 2005) ........... 20

 Fed. R. Civ. P. 12(b)(6) .................................................................................................. 7

**Other Authorities**

Basis, Black's Law Dictionary (4th ed. 1968) ................................................................ 9

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ........................................................................................ 5

H.R. Rep. No. 107-329 (2001) .................................................................................. 2, 4

H.R. Rep. No. 86-956 (1959) .................................................................................. 10, 13

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 23, 2026), https://perma.cc/UHF4-SPUA .................................................................................................................................. 5

Purpose, Black's Law Dictionary (4th ed. 1968) ........................................................... 9

Proposed Intervenor-Defendant Maryland/DC Alliance for Retired Americans (the "Alliance") hereby moves, through undersigned counsel, to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this Motion, the Alliance states as follows:

## INTRODUCTION

The United States Department of Justice ("DOJ") seeks to build a nationwide database of registered voters, a scheme not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration. To accomplish this task, DOJ has demanded that dozens of states turn over their full, unredacted voter lists, even though state laws often shield voter information on those lists—most notably driver's license numbers, social security numbers, and dates of birth—from disclosure. Maryland law is no exception: among other protections, it prohibits "inspection of the part of a public record that contains sociological information," MD Code Ann., Gen. Provisions § 4-330, which includes social security numbers, dates of birth, and driver's license numbers, *see* MD Code Regs. 02.06.01.17.

Because State Election Administrator Jared DeMarinis followed Maryland's privacy laws and refused to acquiesce to DOJ's demands, DOJ amplified its pressure campaign by filing suit, seeking to forcibly obtain the State's unredacted voter registration list. The Complaint relies on a single cause of action brought under Title III of the Civil Rights Act of 1960 ("CRA"), which Congress enacted to combat the infringement or denial of the right to vote. Not surprisingly, this landmark civil rights law does not support DOJ's attempt to compel Maryland to turn over sensitive personal data of registered voters for several reasons.

First, the CRA requires DOJ to provide a statement identifying the "purpose" of its investigation and the "basis" for its determination that a violation of federal voting rights law may have occurred. But DOJ failed to offer any valid basis for its demand, and its stated purpose—to

assess Maryland's compliance with administrative list maintenance activities required under the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is beyond the reach of Title III. Second, even a lawful Title III request does not preempt Maryland's state law privacy protections, which prohibit the Administrator from furnishing certain sensitive voter data such as driver's license or social security numbers. Finally, the Privacy Act prohibits unfettered governmental possession of individuals' personal information, and bars any collection of such sensitive data until the agency has implemented requisite procedural safeguards.

Legal errors aside, DOJ's attempt to create a federal voter registration database also runs directly contrary to the decentralized structure of our federal electoral system. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (granting states principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329 at 32 (2001). DOJ's effort to assert sweeping federal authority over the management of federal elections would dismantle the careful delineation of authority over American elections, as reflected by the Constitution and long-established federal laws.

For these same reasons, federal courts in California and Oregon recently dismissed DOJ's parallel lawsuits seeking the same types of sensitive data about voters in those states as DOJ demands here. In addition to thoroughly rejecting DOJ's claims on the merits, the California court warned that DOJ's efforts are "antithetical to the promise of fair and free elections our country promises and the franchise that civil rights leaders fought and died for." *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at \*2 (C.D. Cal. Jan. 15, 2026); *see also* Minute Entry, *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026), ECF No.

68 (advising that court is granting motions to dismiss and will issue a more detailed, written opinion shortly). DOJ's attempt to assert sweeping federal authority over the management of federal elections is not only unprecedented—it would dismantle the careful delineation of authority over American elections as reflected by the Constitution and long-established federal laws. The Court should dismiss the Complaint with prejudice.

## BACKGROUND

I. **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. As relevant here, Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges states—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th

Cir. 2024). Like the NVRA, HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). Further, HAVA commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. **This system has many benefits that must be preserved. The dispersal of responsibility for election administration *has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome.*** This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31–32 (emphases added).

Consistent with that principle, neither the NVRA nor HAVA authorizes the federal government to compile a national voter database. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

## II. The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter data held by the states.

In the spring of 2025, DOJ launched a campaign to obtain broad and unprecedented access to state voter files, including sensitive and personal information about each registered voter. To date, DOJ has sent demands to 44 states and the District of Columbia, with plans to make similar

demands on all 50.[1] The vast majority of states that have received such demands—including those led by Republican officials—have responded by declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ's nationwide pressure campaign reached Maryland on July 14, 2025, when DOJ sent Administrator DeMarinis a letter demanding, among other things, Maryland's "statewide voter registration list." Compl. at 8, ECF No. 1. Administrator DeMarinis responded two weeks later with an in-depth description of the state's procedures for list maintenance and for accessing the state's publicly available voter registration list. *Id.* ¶ 24; Mot. to Compel, Ex. 2 at 7–11, ECF No. 2-2. In early August, DOJ submitted a request for the voter list using an online application, to which Administrator DeMarinis responded by requesting information from DOJ to determine whether its intended use of the data complied with Maryland law. *See* Mot. to Compel, Ex. 3 at 13–14, ECF No. 2-2. Ignoring Administrator DeMarinis's inquiry, DOJ reiterated its demand in an August 18 letter, *see* Mot. to Compel, Ex. 4 at 16–18, ECF No. 2-2, asking Maryland to produce its entire computerized statewide voter registration list with "*all fields*, which includes the registrant's full name, date of birth, residential address, and his or her state driver's license number or the last four digits of the registrant's social security number," *id.*; *see also* Compl. ¶ 22. Administrator DeMarinis responded on August 25, refusing the demand "absent particularized and

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 23, 2026), https://perma.cc/UHF4-SPUA; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 2 (eleven states have reportedly given or intend to give DOJ the information it seeks: Arkansas, Indiana, Kansas, Louisiana, Mississippi, Tennessee, Texas, and Wyoming).

detailed" explanations of DOJ's need for, and intended use of, the sensitive information. *See* Mot. to Compel, Ex. 5 at 20–22, ECF No. 2-2.

### III. The Department of Justice filed suit to obtain Maryland's voter registration records.

It does not appear that DOJ ever provided Administrator DeMarinis with the information he sought. Instead, on December 1, 2025, it filed its Complaint in this action seeking to compel Maryland to provide a copy of its full, unredacted statewide voter registration database. *See generally* Compl. DOJ frames its demand as part of an effort to ensure that Maryland is complying with its list maintenance obligations under the NVRA and HAVA, *id.* ¶¶ 16–23, but fails to assert any claim under either statute. Instead, DOJ asserts a solitary claim under Title III of the Civil Rights Act of 1960: a law that permits DOJ to review certain voting "records and papers which come into [the Administrator's] possession," 52 U.S.C. §§ 20701–20703, for the purpose of enabling investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Notably, DOJ previously asserted claims under the NVRA and HAVA in otherwise identical complaints that it brought against multiple other states in September of last year.[3] However, in the following 17 lawsuits that it filed against states seeking the same relief (including this one against Maryland), DOJ has abandoned its NVRA and HAVA claims.[4]

---

[3] *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025).

[4] *See* Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Amore*, No. 25-cv-00629 (D.R.I. Dec. 2, 2025); Compl., *United States v. Copeland Hanzas*, No. 25-cv-903 (D.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And the "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

DOJ's reliance on Title III of the CRA to justify its sweeping demand fails for three independent reasons. First, DOJ has not complied with the basic procedural requirements contained within Title III, namely that it provide Maryland with a proper "basis" and "purpose" for its demand for records. Second, Title III does not preempt Maryland's privacy protections for highly sensitive personal data. And finally, DOJ's attempted collection and maintenance of this

---

Vt. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Oliver,* No. 1:25-cv-01193 (D.M.N. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 25-cv-03967 (D. Colo. Dec. 12, 2025); Compl., *United States v. Nago*, No. 25-cv-00522 (D. Haw. Dec. 12, 2025); Compl., *United States v. Galvin*, No. 25-cv-13816 (D. Mass. Dec. 12, 2025); Compl., *United States v. Aguilar*, No. 25-cv-00728 (D. Nev. Dec. 2, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-66 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-21 (D. Conn. Jan. 6, 2026); Compl. *United States v. Beals*, No. 3:26-cv-00042 (E.D. Va. Jan. 16, 2026).

data violates the federal Privacy Act. This court should follow the lead of its sister courts and dismiss the complaint with prejudice. *See Weber*, 2026 WL 118807, at \*20; Minute Entry, *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026), ECF No. 68.

**I.      DOJ failed to satisfy Title III's threshold requirements of stating a valid "basis" and "purpose" for its demand.**

Governmental agencies are "not afforded unfettered authority to cast about for potential wrongdoing." *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 689 (D.C. Cir. 2017) (citation modified). Instead, an agency's authority to demand documents and information "is a creature of statute," *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018), and, as such, it "must comply with statutory requirements," *id.* at 460. If an agency fails to follow the relevant statutory prerequisites for issuing a demand for information, courts will decline to order enforcement. *See, e.g.*, *ACICS*, 854 F.3d at 690 (declining to enforce civil investigative demand where agency failed to comply with statutory requirements).

Title III contains a fundamental requirement that DOJ failed to follow in demanding the data it seeks here: it requires that any request for records "shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). The use of "and" means that DOJ must provide both. *See United States v. Wayda*, 966 F.3d 294, 307 (4th Cir. 2020) ("[I]t is well-settled that courts should disfavor interpretations of statutes that render language superfluous.") (citation modified). "The requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at \*9. Indeed, multiple district courts have, in just the past few months, quashed records demands when DOJ sought to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. 2:25-mc-00039-MAK, 2025 WL 3252648, at \*12, 17 (E.D. Pa.

Nov. 21, 2025) (striking DOJ subpoena that "invoke[d] sweeping needs" for information that had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see also In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review").

Title III's "basis" requirement ensures that the federal government will not unduly interfere in the states' traditional oversight of elections unless DOJ is able to state a concrete reason to believe that a state has denied the right to vote or otherwise violated federal voting rights law. *See Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). This requirement advances public accountability and guards against bad-faith investigations, imposing the very undemanding requirement that DOJ simply be able to articulate *why* it seeks the information it demands. *Cf. ACICS*, 854 F.3d at 691 (concluding that mere citation to statutory provisions in agency's statement failed to sufficiently provide "statutory basis for the Bureau's investigation," "especially considering the Bureau's failure to adequately state 'the specific conduct under investigation'").

Similarly, Title III's "purpose" requirement ensures that the federal government's intentions for the information sought, once acquired, are proper and just, and allows judicial evaluation of whether the demand does in fact comport with the government's stated purpose. *See Purpose*, *Black's Law Dictionary* (4th ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project"); *cf. ACICS*, 854 F.3d at 689–90 ("Because the validity of a CID is measured by the purposes stated in the notification of purpose, the adequacy of the notification of purpose is an important statutory requirement." (citation omitted)).

To understand the basis and purpose requirements, the Court must "look not only to the particular statutory language, but to the statute as a whole and to its object and policy." *Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 303 (4th Cir. 2013). The Court should "account for both the specific context in which language is used and the broader context of the [entire] statute." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (citation modified); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). Accordingly, the terms "basis" and "purpose" must be read in the specific context of the Civil Rights Act of 1960, a law that serves the critical but narrow function of ensuring that the voting rights of all citizens receive the protections due under the U.S. Constitution. *See United States v. Ward*, 349 F.2d 795, 804 (5th Cir.) (noting that the purpose of the CRA was to ensure voter laws were enforced "in accordance with constitutional demands"), *modified on reh'g*, 352 F.2d 329 (5th Cir. 1965); *United States v. State of Ala.*, 192 F. Supp. 677, 682 (M.D. Ala. 1961) (noting that the Act was "was adopted to protect the right to vote" when voters faced "discriminatory acts and practices, which acts and practices clearly violate the Constitution and laws of the United States"), *aff'd*, 304 F.2d 583 (5th Cir. 1962), *aff'd sub nom.*, *Ala. v. United States*, 371 U.S. 37 (1962); H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights").

DOJ has yet to cite a single instance in the 65 years of Title III's existence in which a court has read Title III to require the production of records in response to a demand that did not relate to "infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. Indeed, the

principal authority that DOJ cites in its Complaint confirms that DOJ has previously complied with this statutory requirement. *See id.* at 229 n.6. In *Lynd*, the court recognized that the "basis" of DOJ's demand was "information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction"; and the "purpose" was "to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." *Id.* (citation modified). Other Title III cases from that period likewise contained an explicit statement of both a "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). But here, DOJ's demand was deficient on both fronts. *See, e.g.*, *Source for Pub. Data*, 903 F.3d at 460 (declining to enforce a civil investigative demand because "[an agency] must comply with statutory requirements, and here it did not").

## A.    DOJ did not provide any statement of the "basis" for its demand.

Nowhere in its correspondence with Administrator DeMarinis (or in its pleadings) has DOJ provided any basis to believe that Maryland has infringed the voting rights of its citizens.[5] In its

---

[5] Consideration of DOJ's correspondence with the Administrator does not convert this Rule 12 motion to dismiss into a Rule 56 motion for summary judgment. DOJ docketed the correspondence contemporaneously with its Complaint, *see* ECF 2-2, and refers to it in the Complaint. Compl. ¶¶ 21–27. When a Plaintiff cites to a document in its complaint but fails to attach it, "a court may consider [the document] in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (*citing Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2nd Cir.1991)); *see also Harts v. Calvert Cnty. Sheriff,* No. 8:22-cv-03192-BAH, 2024 WL 944321, at *3 n.3 (D. Md. Mar. 5, 2024) ("When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint," other parties may use the document when attacking the complaint for its failure to state a claim, "because plaintiff should not so easily be allowed to escape the consequences of its own failure." (citation modified)).

July 14 letter, DOJ cited the NVRA and requested that Maryland provide an explanation for data that DOJ interpreted to suggest Maryland's voter file included individuals who were ineligible to vote. *See* Mot. to Compel, Ex. 1 at 2–5, ECF No. 2-2. But DOJ did not offer that data as evidence that any Marylander had been wrongfully denied the ability to register, vote, or have their vote counted. As in the parallel California suit, "there was no explanation for why unredacted voter files for millions of Californians, an unprecedented request, was necessary for the DOJ's investigation." *Weber*, 2026 WL 118807, at *9. DOJ's bare assertion in its Complaint that its "written demand 'contain[ed] a statement of the basis and the purpose therefor,'" Compl. ¶ 29 (quoting 52 U.S.C. § 20703), is a textbook example of a legal conclusion, unsupported by any factual allegation that cannot defeat a motion to dismiss. *See Rouse v. Moore*, 724 F. Supp. 3d 410, 417 (D. Md. 2024), *appeal docketed*, *Rouse v. Fader*, No. 25-1004 (4th Cir. Jan. 2, 2025).

DOJ's omission of any cognizable basis in its correspondence with the state, complaint, and motion to compel is particularly striking given that Administrator DeMarinis specifically identified this defect in his August 25 letter, noting that DOJ has provided "no basis for suspecting any shortcoming or failure in Maryland's HAVA compliance" and that the state had already "detailed its compliance with the NVRA." Mot. to Compel, Ex. 5 at 21. To date, DOJ has made what appear to be near carbon copy demands to 44 other states and has sued 24 of those states (as well as the District of Columbia) with complaints that contain nearly identical boilerplate claims and allegations as here. *See supra* Background §§ II, III. In no case does it appear that DOJ has asserted a basis for investigating any of these states for any violation of voting rights. But rather than remedy its error and explain the basis for its Maryland investigation in response to the Administrator's well-grounded objections, DOJ jumped straight to filing this lawsuit. That deficiency warrants dismissal.

### B.       DOJ did not provide a proper "purpose" for its demand.

Separate and independent from its failure to provide any basis for its demand, DOJ's claim must also be dismissed because it failed to articulate a proper purpose. While Congress enacted the record retention provisions of Title III "to secure a more effective protection of the right to vote," *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom.*, *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"), DOJ *admits* that it is *not* seeking Maryland's statewide voter registration list for that reason. Rather, DOJ seeks to "ascertain Maryland's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 25. That purpose, however, is beyond the scope of the CRA. "Title III was not passed as a tool for NVRA compliance." *Weber*, 2026 WL 118807, at *9. And "driver's license numbers and partial social security numbers were not required for voter registration until the passage of HAVA in 2002 so Congress could not have conceived for this highly sensitive information to be at the DOJ's disposal through the passage of Title III four decades prior." *Id.*

Further, even if ascertaining Maryland's compliance with the NVRA and HAVA were permissible grounds for invoking Title III, "DOJ states no reason why an *unredacted* version of [Maryland's] voter list is necessary." *Id.* (emphasis added). Both the NVRA and HAVA grant states broad discretion in list maintenance: State efforts under the NVRA need only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State," *id.* § 21085. In response to DOJ's HAVA and NVRA inquiries, Administrator DeMarinis offered pages of detailed responses with exacting descriptions of the state's voter roll maintenance procedures. Mot. to Compel, Ex. 2 at 7–11. Administrator DeMarinis also repeatedly requested that DOJ state the purpose for which the list would be used—seeking

nothing more than what DOJ was required to provide under Title III—but DOJ never explained why it believes it requires particularly sensitive information about voters. Mot. to Compel, Ex. 3 at 13; *id.,* Ex. 5 at 20. And even in its Complaint, DOJ still fails to advance any reasonable basis or purpose that can justify its sweeping demand. *See In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *17; *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 237.

## II.     Title III does not pre-empt Maryland's privacy protections.

Administrator DeMarinis explained to DOJ the process for obtaining publicly available data in the statewide voter registration list, which is subject to strict restrictions against using the list "for a purpose that results in or has the intent to result in the denial or abridgment of the right of a Maryland citizen to vote or causes a qualified voter to be stricken from [the] voter registration list." Mot. to Compel, Ex. 5 at 21. Numerous Maryland laws and regulations prohibit the State from sharing sensitive personal information that is withheld from the publicly available voter list. By statute, the State Board of Elections that maintains the voter file "may not disclose data" in the voter file "except as provided by" the Public Information Act. MD Code Ann., Election Law § 3-101(e)(2). That Act, in turn, requires custodians to "deny inspection of the part of a public record that contains sociological information," MD Code Ann., Gen. Provisions § 4-330, which is defined to include Social Security numbers, driver's license numbers, and dates of birth, MD Code Regs. 02.06.01.17; *see also* MD Code Ann., State Gov't § 10-1301(c)(1) (defining "Personal Information" to include Social Security and driver's license numbers); *id.* § 10-1304(a) (requiring "reasonable security procedures and practices and procedures" to protect personal information). Maryland even requires a statement on the voter registration application that "voter registration records are generally available for public inspection," "*except for* an applicant's full Social Security number or [driver's license] number." MD Code Regs. 33.05.02.02(B)(5) (emphasis

added). Accordingly, for DOJ to access this information, it must show that Title III preempts Maryland's privacy protections. It does not.

Because Title III contains no *express* preemption provision, *see* 52 U.S.C. § 20703, DOJ's argument must rest on the idea that Maryland's privacy protections *impliedly* conflict with Title III, *see generally Atl. Coast Pipeline, LLC v. Nelson Co. Bd. of Supervisors*, 443 F. Supp. 3d 670 (W.D. Va. 2020) (discussing express versus implied preemption). The Fourth Circuit and the Supreme Court have made clear that "a federal statute is presumed not to preempt a state provision." *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 492 (4th Cir. 2025) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *see* Antonin Scalia & Brian A. Garner, *Reading Law* 290 (2012) ("It is a reliable canon of interpretation . . . to presume that a federal statute does not preempt state law."). Although the presumption against preemption "does not hold when Congress acts under the Elections Clause, which empowers Congress to make or alter state elections regulations," *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 51–52 (1st Cir. 2024) (citation modified), or when Congress otherwise regulates the mechanics of the voting process, Title III addresses only the retention, maintenance, and disclosure of records; it does not target any state election regulations or practices, nor does it implicate any voting requirements. Accordingly, the presumption applies here. *See Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1242 (10th Cir. 2011) ("In all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (quoting *Medtronic*, 518 U.S. at 485)).

Title III does not evince a "clear and manifest purpose" that Congress intended to preempt state privacy laws that protect highly sensitive information. To the contrary, in the principal case DOJ cites in its Complaint, the Fifth Circuit explained that Title III is intended to reach *only* "public

records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not of the type ordinarily "open to legitimate reasonable inspection," *id.*; instead, DOJ seeks obviously sensitive information that enjoys strong privacy protection under both federal and state law, *see Weber*, 2026 WL 118807, at *9 (recognizing that this "sensitive and identifying information is private and not open to inspection by federal officials").

Further confirmation that Title III does not preempt Maryland's privacy protections may be found in the judicial consensus that a similar disclosure requirement in the NVRA likewise does *not* preempt state laws protecting the same highly sensitive categories of information that DOJ seeks here. *See id.* at *13 (finding that, even if the NVRA might require disclosure of records under some circumstances, "California's privacy laws would not be preempted"). Both Title III and the NVRA require disclosure of certain records relating to voter registration, and they employ similar language to do so. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* 52 U.S.C. § 20507(i) (NVRA: requiring that states "shall make [covered voting records] available for public inspection"). Yet multiple courts—including the Fourth Circuit— have held that the NVRA does *not* prohibit States from restricting access to precisely the information that DOJ seeks. *See Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing the NVRA permits redactions to "protect sensitive information"); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA); *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 446 (D. Md. 2019) (ordering disclosure of records "subject to compliance with the relevant state law"); *see also Voter Reference Found., LLC*

*v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."); *Bellows*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers).

This conclusion is reinforced by analyzing the choices Congress made when it enacted the NVRA and HAVA. Recall that DOJ's stated purpose for its demand here for personal and highly sensitive voter information is purportedly to evaluate Maryland's compliance with its list maintenance obligations under those statutes. Compl. ¶ 20. But if Congress had thought that it was necessary or desirable for DOJ to have access to a database containing highly sensitive information about every voter in a state so that it would be able to ensure that the state was complying with its list maintenance obligations, it would have done so in *the NVRA and HAVA themselves*. Congress did not. In fact, Congress created a *different* mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this provision to allow for "critical scrutiny and public audits of voter

data"—but nonetheless did not prevent states from redacting sensitive voter data. *Voter Reference Found.*, 160 F.4th at 1082 & 1083 n.14. Congress specified only that records subject to inspection must include the "names and addresses" of certain voters, 52 U.S.C. § 20507(i)(2), but stopped short of requiring states to go beyond that and disclose sensitive voter information. *See supra* at 16–18. As for HAVA, it contains no disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). In short, it simply makes no sense to suggest that Congress intended Title III to preempt state privacy laws protecting highly sensitive voter data so that the federal government can assess compliance with voter list maintenance under the NVRA and HAVA—both statutes reflect a congressional judgment *not* to preempt such laws.

### III.    DOJ has failed to comply with the Privacy Act, which independently requires dismissal.

The Privacy Act, codified at 5 U.S.C. § 552a, *et seq.*, "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). In its rush to sweep up the sensitive information of every registered voter in Maryland, DOJ overlooked the Privacy Act's basic procedural requirements, despite Administrator DeMarinis's express request for information about DOJ's compliance efforts. *See* Mot. to Compel, Ex. 5 at 20. As a result, the Privacy Act independently prohibits DOJ from obtaining Maryland's statewide voter registration list.

The Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). Both of those terms are given specific definitions by the statute.

A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Maryland's statewide voter registration list, which contains the names of all registered voters in the state as well as their voter registration identifiers and other identifying information, plainly qualifies as a "system of records" under the Privacy Act. The term "maintain" is defined to include "maintain, collect, use, or disseminate." *Id.* § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Maryland's statewide voter registration list, the obligations imposed by subsection (e) are triggered. *See id.* § 552a(e)(4); *Weber*, 2026 WL 118807, at *17 (noting that DOJ's request for voting records "includes a litany of personal and sensitive information that is governed by the Privacy Act").

Most relevant here, the Privacy Act requires that "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine uses" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act is applicable to its collection of voter data, nor that DOJ must publish a SORN that would apply to voter registration lists. Yet the Complaint is bereft of any allegations that an appropriate SORN has been published. DOJ has alleged in parallel litigation in other states that a SORN they identified as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records," supplies the requisite authority. *E.g.*, Complaint ¶ 23, *United States v. Oliver,* No. 1:25-cv-1193 (D.M.N. Dec. 2, 2025), ECF No. 1. But even if DOJ had included that allegation in Maryland, it would have been insufficient. That SORN does not extend to statewide voter registration lists. It notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It "does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level." *Weber*, 2026 WL 118807, at *18.[6]

Congress enacted these privacy protections to "permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified). If DOJ wishes to compile a federal database of registered voters, the Privacy Act requires (at a minimum) that DOJ give the public adequate notice about its intention to do so, by publishing a SORN that accurately discloses the

---

[6] DOJ's complaints seeking the same information from other states have also cited two other notices in the Federal Register, but they, too, fail to "give sufficient notice to the American public as required under the Privacy Act." *Weber*, 2026 WL 118807, at *18. The first simply adds an additional, allowable "routine use" to the SORN that is not applicable here. *See Privacy Act of 1974; System of Records,* 70 Fed. Reg. 43904 (July 20, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant in the event of a data breach. *See* 82 Fed. Reg. 24147 (May 25, 2017).

system of records it intends to create and the uses to which it will put that information. *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 763 (D. Md. 2025); *Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997) (noting the Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register notice of revisions in the *character* of existing systems of records" ); *see also* 5 U.S.C. § 552a(e)(4); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

Finally, there is no impediment to the Court dismissing the Complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes this argument as an affirmative defense, "where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6)." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Here, the Complaint clearly alleges DOJ's intention to create a system of records that requires compliance with the Privacy Act. Its failure to comply with that Act independently warrants dismissal.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Dated: January 30, 2026

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta*
Jacob D. Shelly (D. Md. Bar No. 30972)
Tina Meng Morrison (D. Md. Bar No. 21832)
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
jshelly@elias.law
tmengmorrison@elias.law
mmcqueen@elias.law

* Admitted *pro hac vice*

*Counsel for Proposed Intervenor-Defendant
the Maryland/DC Alliance for Retired
Americans*