IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JARED DEMARINIS, *in his official capacity as the State Administrator of Elections for the State of Maryland*,<br><br>*Defendant*. | Case No. 1:25-cv-03934-SAG |

**PROPOSED OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER
TO COMPEL RECORDS**

## INTRODUCTION

The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action: start with Rule 12(b) motions and then—if a Plaintiff states a claim and establishes jurisdiction—proceed to discovery, summary judgment, and trial if necessary. Throughout that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to sweep all that aside and to instead put the onus on the *defendant* to resist a "motion to compel records demanded pursuant to the Civil Rights Act of 1960" at the very start of the case, which would immediately grant DOJ the final relief it seeks in this action. That is not how civil litigation works. Nothing in the Federal Rules or the statutes underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to short-circuit the Rules for its own convenience. And contrary to DOJ's suggestion, Title III of the Civil Rights Act of 1960 does not "displace[]" the Federal Rules or create a "special statutory proceeding" when DOJ demands voting records. Mem. Supp. Mot. Compel Produc. ("DOJ Mem.") at 5, ECF No. 2-1. Indeed, the term "special statutory proceeding" appears nowhere in the Civil Rights Act, which merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. Finding nothing in the text of Title III to support this theory, DOJ relies instead on a lone, out-of-circuit case from 1962—but that case is distinguishable many times over, is displaced by intervening Supreme Court authority, and, in any event, cannot trump the Federal Rules.

The Court should reject DOJ's effort to leapfrog the prescribed stages of litigation it apparently finds bothersome and allow the action to unfold as prescribed by the governing Federal Rules—starting by resolving the pending motions to dismiss.

2

## BACKGROUND[1]

DOJ filed this suit on December 1, 2025, seeking to compel Maryland to turn over its full statewide voter registration list without redacting sensitive information protected from disclosure by state law. *See* Compl. at 7–8, ECF. No. 1. DOJ's complaint contains a single cause of action under Title III of the Civil Rights Act of 1960, *see id.* ¶¶ 28–30, and it also cites (but does not bring claims under) the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), *see id.* ¶¶ 11–15. *None* of these statutes support DOJ's sweeping and novel demand, as the Alliance explains more thoroughly in its proposed motion to dismiss. *See* Mot. Dismiss ("Alliance Mot.").

With respect to Title III, DOJ's reliance on that statute fails many times over. First, DOJ failed to comply with the statute's basic procedural requirement that it give notice to Maryland of the basis of its demand. *See* Alliance Mot., Argument § I.A. Nor can Title III be used as a blank check to permit the federal government to broadly demand the private data of every single voter in the state purportedly to "investigate" the state's compliance, not with the Civil Rights Act at all (which DOJ does not allege has been violated), but the NVRA and HAVA—entirely different federal statutes. *See* Alliance Mot., Argument § I.B. Further, Title III does not preempt Maryland laws that prohibit the Secretary of State from disclosing highly sensitive voting information. *See* Alliance Mot., Argument § II. And even setting aside those obstacles, the federal Privacy Act

---

[1] The Alliance's Proposed Motion to Dismiss further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Maryland and throughout the country.

independently prohibits DOJ from collecting Maryland's statewide voter registration list, at least absent certain procedural safeguards that DOJ ignored. *See* Alliance Mot., Argument § III.

DOJ asks the Court to effectively disregard all of these arguments (and the Federal Rules that govern civil litigation in federal court) and order State Administrator DeMarinis "to produce an electronic copy of the Maryland statewide Voter Registration List," including all the sensitive fields DOJ demands. Mot. Compel Produc. at 2, ECF No. 2. In support, DOJ claims that the "[Civil Rights Act] displaces the Federal Rules of Civil Procedure" and authorizes a "special statutory proceeding" in which "Administrator DeMarinis . . . must produce the voter-registration lists and other Federal election records demanded by the Attorney General." DOJ Mem. at 13. In other words, DOJ appears to believe that it should be immediately entitled to the ultimate, dispositive relief that it seeks in this action based solely on its "motion for order to compel records."

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action and provide a roadmap for how this case—like nearly all other civil actions—must proceed. Nothing in the statutory text or the Rules themselves support DOJ's contention that Title III "displaces" the Rules or authorizes a "special statutory proceeding." DOJ Mem. at 5. Nor does anything in the Rules authorize courts to award dispositive relief—and effectively final judgment—via an order to produce records. The Court should thus deny DOJ's motion and permit this litigation to unfold under the normal course, starting with resolving motions to dismiss.

**I.      The Federal Rules govern DOJ's claim.**

The Court should reject DOJ's request to sweep aside the Federal Rules in this case. The Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—

such as certain admiralty or bankruptcy actions—none involve the Civil Rights Act of 1960. *See* Fed. R. Civ. P. 81(a). Indeed, Rule 81(a)(5) affirms that the Federal Rules generally apply to actions involving a subpoena, "except as otherwise provided by statute, by local rule, or by court order in the proceedings"—a limited exception that does not apply here because Title III does not authorize DOJ to issue subpoenas, nor does it provide for any procedures that depart from the Federal Rules. Congress knows how to create streamlined statutory proceedings, *see, e.g.*, 29 U.S.C. § 161(1)–(2) (authorizing National Labor Relations Board to issue subpoenas and seek "court aid" in compelling compliance under threat of contempt), but it did not do so in Title III. Accordingly, based on the plain text of Rule 1, this action is governed by the Federal Rules of Civil Procedure, just like all other civil actions that lack special carveouts in statutes or the Federal Rules themselves.

    DOJ's demand for a "special statutory proceeding," DOJ Mem. at 13, is irreconcilable with the statute's plain text because Title III says no such thing. The statute merely assigns jurisdiction to hear Title III disputes to "[t]he United States district court for the district in which a demand is made," and provides that such courts may "by appropriate process" compel the production of covered records. 52 U.S.C. § 20705. As the first federal court to adjudicate DOJ's procedural arguments put it, "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures," *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026) (exercising "appropriate process" by applying the Federal Rules of Procedure). Nor does the term "summary proceeding," DOJ Mem. at 13, appear anywhere in the law.

    DOJ's contrary argument relies solely on a Fifth Circuit opinion from 1962 that describes a Title III action as a "special statutory proceeding" with minimal judicial involvement. *Id.*

5

(quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). But *Lynd*'s conclusion on that score finds no support in the statutory text and is fundamentally out of step with more recent Supreme Court precedent. Just two years after *Lynd*, the Supreme Court held that a government request for a district court to enforce a tax subpoena under a statute materially similar to Title III must proceed under the Federal Rules. *See United States v. Powell*, 379 U.S. 48, 57–58 (1964). The Court reasoned that because the statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction . . . the Federal Rules of Civil Procedure apply" and "proceedings are instituted by filing a complaint, followed by an answer and hearing." *Id*. at 58 n.18. *Powell* further explained that the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language underlying the subpoena in that case. *Id.* at 57. This makes sense: "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. *Lynd*'s refusal to engage in judicial review of government document requests is simply not the law.[2]

In other actions, DOJ has pointed to a recent order from another federal court instructing the Connecticut Secretary of State to show cause as to why the court should not order the release of the State's voter registration list, Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D.

---

[2] The procedure and facts before *Lynd* also differ starkly from those here. To start, that appeal consolidated five separate cases from two different states and two judicial districts. *Lynd*, 306 F.2d at 225. The precise procedures—whether pursuant to the Federal Rules or not—are not detailed for each case, nor did the Fifth Circuit question them. There is nothing in *Lynd* that supports the procedural maneuver DOJ tries here. *Lynd* also had no reason to doubt that DOJ invoked Title III for a valid purpose. As the court explained, Title III's "clearest purpose" is to permit investigations "concerning infringement or denial of . . . voting rights." 306 F.2d at 228. In *Lynd*, DOJ was doing just that: demanding voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Id.* at 229 n.6.

Conn. Jan. 8, 2026), ECF No. 10 ("Connecticut Order"), but nothing in that Order supports DOJ's extraordinary request. The Order—which was issued in the infancy of that case before the state had appeared (or was even served)—merely set a briefing schedule; it said nothing about the merits of the case, nor does it contain any legal analysis that could aid this Court. *Id.*; *see also Weber*, 2026 WL 118807, at *19 (finding that "the District of Connecticut order . . . amounts to nothing more than a scheduling order delineating a briefing schedule"). The court simply expressed a preliminary procedural view that the issue can be decided after briefing and a hearing, but it did not address the Supreme Court's controlling decision in *Powell* (which the parties in that case have not yet had an opportunity to brief), and it analogizes Title III to 28 U.S.C. § 1782, a provision that expressly dictates a different procedure, in stark contrast to Title III and the statute at issue in *Powell*. Notably, since issuing that order, the Connecticut court has invited further briefing on the procedural question, which will be decided following a hearing currently scheduled in March. *See* Text Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), ECF No. 30.

Unlike *Lynd* or the Connecticut court's preliminary briefing schedule, *Powell*'s reasoning binds this Court, and it forecloses any notion that Title III's simple jurisdictional grant and reference to "appropriate process" requires departing from the Federal Rules for a non-existent summary or special proceeding of DOJ's own invention. Since *Powell*, courts—including the Fifth Circuit—have regularly engaged in meaningful judicial review of government document requests under the Federal Rules. *E.g.*, *United States v. Edwards*, 172 F. App'x 844, 846 (10th Cir. 2006) (discussing *Powell* and observing that a summons recipient may rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of

demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" citation modified).

This Court should thus reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," DOJ Mem. at 13, and should apply those Federal Rules as it does in nearly every other civil action. That starts with resolving the parties' motions to dismiss.

II.     **The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, proceed to discovery.**

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion for order to compel records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: to test the sufficiency of the complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) ("The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."). The Federal Rules likewise set an early deadline for motions to dismiss because they "permit courts to evaluate complaints early in the process" so as to avoid the "high costs of frivolous litigation." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Rule 12(b)(6) motions are thus meant to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

As explained more fully in the Alliance's Proposed Motion to Dismiss, DOJ has no statutory basis for its unprecedented attempt to invoke Title III to seek unredacted copies of statewide voter registration lists. *See* Alliance Mot., Argument §§ I–III. Indeed, despite DOJ having now sued 24 states and the District of Columbia for private voter data, not a single court nationwide has yet found DOJ's claims to be legally viable. The federal courts adjudicating parallel

litigation in California and Oregon demonstrated the proper course: those courts rejected DOJ's efforts to compel production of those states' voter records before Rule 12 motions were resolved, and dismissed DOJ's lawsuits. *See Weber*, 2026 WL 118807, at *8; Minute Order, *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026), ECF No. 68. As the California court explained, "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 2026 WL 118807, at *8. Here, resolving DOJ's motion to compel first would invert the proper course of proceedings, depriving Defendants of their opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Federal Rules envision.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claims in order to resolve the well documented disputes of material fact that may bear on the resolution of this case. For example, even assuming DOJ could seek records under the Civil Rights Act of 1960 to assess Maryland's compliance with the NVRA and HAVA (and there is good reason to find that it cannot), there is a genuine dispute of fact as to whether that is in fact DOJ's purpose. Public reporting has indicated that DOJ intends to create a nationwide voter list, an unprecedented scheme not authorized by any source of law.[3] And Assistant Attorney General Harmeet Dhillon has stated publicly that DOJ intends to use the information to attempt to compel removal of *hundreds of thousands* of voters from the rolls.[4] Granting DOJ the final relief it seeks before the Secretary and Proposed Intervenors have the

---

[3] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[4] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

opportunity to conduct discovery relevant to this and other factual disputes would be premature and contrary to the well-established practices that govern civil litigation.

## CONCLUSION

For the foregoing reasons, the Court should deny DOJ's motion for order to compel records.

Respectfully submitted,                    Dated: January 30, 2026

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Jacob D. Shelly (D. Md. Bar No. 30972)
Tina Meng Morrison (D. Md. Bar No. 21832)
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
jshelly@elias.law
tmengmorrison@elias.law
mmcqueen@elias.law

* Admitted *pro hac vice*

*Counsel for Proposed Intervenor-Defendant
the Maryland/DC Alliance for Retired Americans*