IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JARED DEMARINIS, in his official capacity as State Administrator of Elections,<br><br>    Defendant. | Civil Action No. SAG-25-3934 |

**DEMOCRATIC NATIONAL COMMITTEE'S BRIEF AS AMICUS CURIAE**

Federal law authorizes the Attorney General to demand voter registration records, but she cannot do so based on a misrepresentation. Rather than disclosing "the basis and the purpose" for its demand for the complete, unredacted Maryland voter file—as Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20703, requires—the Department of Justice ("DOJ") suggests it is engaged in routine enforcement of federal civil rights laws. To the contrary, the DOJ intends to transfer the personally identifying information and party affiliation of every registered voter in Maryland to the Department of Homeland Security ("DHS") and is consolidating state databases into a national voter file. This deception invalidates the Title III demand. A Department of Justice that cannot be forthright with state officials cannot be trusted with the personal information of every registered voter in Maryland, including more than 2.2 million active registered Democrats. The Democratic National Committee ("DNC") submits this amicus brief to protect the privacy of its members and the interests of its candidates and campaigns in free and fair elections. Accordingly, the DNC respectfully requests that this Court deny the United States' "motion for order to compel" and grant Administrator DeMarinis's Motion to Dismiss.

## INTEREST OF AMICUS CURIAE

The DNC is the oldest continuing party committee in the United States. Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democratic candidates nationwide, including by organizing citizens to register to vote and to cast ballots in favor of Democratic candidates. The DNC represents millions of voters, including more than 2.2 million active registered Democrats in Maryland.

DOJ has demanded a copy of the State of Maryland's complete, unredacted voter registration list. This demand forces Democrats to choose between participating in elections and the privacy and security of their personal information. Conditioning the right to vote on the

release of private information "creates an intolerable burden on that right." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quoting *Greidinger v. Davis*, 988 F.2d 1344, 1355 (4th Cir. 1993)). The concerns of ordinary Democrats are amplified by uncertainty as to the intended use of their data. The DNC has a significant protectable interest in the success for Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest. *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2042365, *2–3 (D. Nev. Apr. 28, 2020); *cf. Bost v. Ill. State Bd. of Elections*, No. 24-568, 2026 WL 96707, at *3 (U.S. Jan. 14, 2026).

## BACKGROUND

In June 2025, DOJ began sending letters to states demanding complete, unredacted copies of state voter files, and a senior official eventually acknowledged that DOJ intends to send demands to all 50 states. *See* Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline (Aug. 1, 2025, 1:31 PM), https://perma.cc/526V-97C3. Early letters indicated that the files would be used to oversee "Help America Vote Act ('HAVA') . . . compliance" or "full compliance with the NVRA," the National Voter Registration Act. *E.g.*, Ltr. from Maureen Riordan, Acting Chief, Voting Section, Civ. Rights Div., U.S. Dep't of Justice, to Steve Simon, Minn. Sec'y of State (June 25, 2025), https://perma.cc/NZ9N-FCDC; Ltr. from Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rights Div., U.S. Dep't of Justice, to Deirdre Henderson, Lt. Gov. of Utah (July 15, 2025), https://perma.cc/FV8G-W965. DOJ has since confirmed that it is sharing lists it receives with the DHS and developing a national voter file. *See* Tr. 120:6–121:2, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Dec. 12, 2025) ("*Weber* Tr."), ECF No. 100; The Independent Institute, *Harmeet Dhillon | Trump DOJ: Ensuring Election Integrity and Fixing Immigration*, YouTube (Dec. 9, 2025),

https://www.youtube.com/watch?v=FLtqQqt2FwA (at 1:59) (describing data comparison between states); Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025, 12:38 PM), https://perma.cc/C6RQ-6ATP (quoting DOJ and DHS statements confirming collaboration between the two agencies); Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/9PM4-2A6R.

On July 14, 2025, DOJ sent a letter to Maryland Administrator of Elections Jared DeMarinis demanding an unredacted copy of Maryland's statewide voter registration list pursuant to Section 8(i) of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i). Ltr. from Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rights Div., U.S. Dept. of Justice, to Jared DeMarinis, State Administrator of Elections, Md. Bd. of Elections at 2 (July 14, 2025) ("July 14 Ltr."), ECF No. 2-2 at 2. The letter also contained a series of questions and data demands mirroring an NVRA notice letter that the Republican National Committee would send four days later, suggesting unprecedented partisan coordination. *Compare* July 14 Ltr. at 2–3, *with* July 18 Ltr., *Republican Nat'l Comm. v. DeMarinis*, No. SAG-25-3989 (D. Md. Dec. 5, 2025), ECF No. 1-2. On July 30, Administrator DeMarinis sent a reply detailing Maryland's voter registration list maintenance procedures. Ltr. from Jared DeMarinis, State Administrator of Elections, Md. Bd. of Elections, to Maureen Riordan, Acting Chief, Voting Section, U.S. Dept. of Justice (July 30, 2025), ECF No. 2-2 at 7. On August 13, Administrator DeMarinis then asked for clarification concerning DOJ's intended use of the statewide voter registration list. *See* Ltr. from Jared DeMarinis, State Administrator of Elections, Md. Bd. of Elections, to Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rights Div., U.S. Dept. of Justice (Aug. 13, 2025) ("Aug. 13 Ltr."), ECF No. 2-2 at 13. Five days later, DOJ responded by demanding "all fields"

of the Maryland voter file, including full name, date of birth, residential address, driver's license number and partial Social Security number, and asserted that Maryland's privacy concerns would be addressed by "federal privacy protections." Ltr. from Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rights Div., U.S. Dept. of Justice, to Jared DeMarinis, State Administrator of Elections, Md. Bd. of Elections (Aug. 18, 2025) ("Aug. 18 Ltr."), ECF No. 2-2 at 16. The second letter abandoned Section 8(i) of the NVRA as authority for the request and instead invoked Section 11(a) of the NVRA, 52 U.S.C. § 20510(a), Section 401 of HAVA, 52 U.S.C. § 21111, and Title III of the Civil Rights Act of 1960, 52 U.S.C. §§ 20701–05. *Id.* at 1–2. The letter claimed that "The purpose of the request is to ascertain Maryland's compliance with the list maintenance requires of the NVRA and HAVA." *Id.* at 2. On August 25, Administrator DeMarinis replied in a letter repeating his earlier questions regarding the purpose of the request and voter privacy. Ltr. from Jared DeMarinis, State Administrator of Elections, Md. Bd. of Elections, to Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rights Div., U.S. Dept. of Justice (Aug. 25, 2025), ECF No. 2-2 at 20.

Rather than respond to this last letter, the United States waited three months and then filed suit. *See* Compl., ECF No. 1. The Complaint asserts only a claim under Title III, *see id.* ¶¶ 38–30, abandoning the DOJ's earlier assertions of authority under the NVRA and HAVA, *see* July 14 Ltr. (invoking authority under Section 8(i) of the NVRA); Aug. 18 Ltr. (invoking authority under Section 11(a) of the NVRA and Section 401 of HAVA). That same day, the United States filed a "Motion for Order to Compel Records." ECF No. 2. On February 2, 2026,

Administrator DeMarinis filed a brief in opposition to the United States' Motion and moved to dismiss. ECF No. 34; ECF No. 35.[1]

## LEGAL STANDARD

Title III of the Civil Rights Act of 1960 ("Title III"), 52 U.S.C. §§ 20701–06, dictates that "every officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election], all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" or transfer such materials to another officer of election or designated custodian. 52 U.S.C. § 20701. In turn, "[a]ny record or paper required by [Title III] to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." *Id.* § 20703. "This demand shall contain a statement of the basis and the purpose therefor." *Id.* "The United States district court for the district in which a demand is made pursuant to [Title III] . . . shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

## ARGUMENT

DOJ cannot obtain the complete, unredacted Maryland voter file—including voters' dates of birth, Social Security numbers, driver's license numbers, and partisan affiliations—based on a facially deficient Title III demand. By offering mere pretext rather than an honest statement of

---

[1] DOJ has thus far sued 24 states and DC for unredacted voter files. *See* U.S. Dep't of Justice, *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026), https://perma.cc/6NET-8BNG. DOJ has also obtained or is obtaining another 14 states' complete, unredacted voter files through voluntary disclosures. *See Weber* Tr. 88:24–90:18.

5

"the basis and the purpose" for the demand, the Attorney General has forfeited Title III authority. 52 U.S.C. § 20703. Title III requests are subject to "appropriate process," 52 U.S.C. § 20705, scrutiny the instant request cannot withstand.

## I.     DOJ Has Obscured the True Basis and Purpose for Its Title III Demand.

DOJ's Title III claim seeking the complete, unredacted Maryland voter file should be dismissed because the demand did not state "the basis and the purpose therefor." 52 U.S.C. § 20703; *see also* Mem. of L. ("Md. Mem.") at 23-27, ECF No. 34-1. Title III requires candor between federal officials and state and local election administrators who safeguard voters' sensitive personal information. Thus, DOJ cannot use Title III to obtain records "under the guise of a pretextual investigative purpose." *United States v. Weber*, No. 2:25-cv-9149, 2026 WL 118807, at *12 (C.D. Cal. Jan. 15, 2026); *see also CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.* (*ACICS*), 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigative demand "is measured by the purposes stated," making notification of purpose "an important statutory requirement"). Yet DOJ has provided Maryland and its citizens with shifting explanations and half-truths. DOJ first told Administrator DeMarinis that it sought information "regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act." July 14 Ltr. at 1. Little more than a month later, DOJ demanded the same information "to ascertain Maryland's compliance with the list maintenance requirements of the NVRA and HAVA." Aug. 18 Ltr. at 2. "Behind this screening, there appears to be a different purpose." *Weber*, 2026 WL 118807, at *11 (addressing DOJ's request to California). DOJ has publicly confirmed that it is sharing voter files with DHS and compiling a national voter file. *See, e.g.*, *DOJ Is Sharing State Voter Roll*

*Lists with Homeland Security*, *supra*; *see also Weber*, 2026 WL 118807, at *11. As explained below, neither action is related to NVRA nor HAVA enforcement.[2]

Title III demands a statement of "*the* basis and *the* purpose" for the demand, not merely *a* basis and *a* purpose. 52 U.S.C. § 20703 (emphasis added). By twice using the definite article, Title III requires the Attorney General to offer "a discrete thing": the complete basis and purpose of the request and not merely one basis and purpose among many. *See Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021) (reasoning that statute's use of "the" with a singular noun means "a discrete thing"); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between definite and indefinite article). Without a complete statement of the basis and the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [DOJ] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III requests cannot be "used without restraint"). Ultimately, "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be . . . misrepresentations." *Universal Health Servs. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016); *cf. Dep't of Commerce v. New York*, 588 U.S. 752, 781–85 (2019) (affirming the district court's decision to set aside agency action due to pretextual invocation of the Voting Rights Act). Thus, DOJ's refusal to be forthright about the intended use of sensitive personal information is fatal to the

---

[2] DOJ similarly invoked HAVA when requesting 2020 election records, even while asserting an interest in "transparency." Ltr. from Harmeet K. Dillon, Assistant Att'y Gen., Civ. Rights Div., U.S. Dept. of Justice, to Sheri Allen, Fulton Cnty. Bd. of Registration & Elections, et al. (Oct. 30, 2025), https://perma.cc/WCM3-FVTW. DOJ's repeat demands for records based on pretextual invocation of HAVA undercut purported reliance on HAVA here.

demand. *Cf. United States v. Raffensperger*, No. 5:25-cv-548, 2026 WL 184233, at *3 (M.D. Ga. Jan. 23, 2026) (dismissing Title III request for failure to comply with statutory requirements).

DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA or HAVA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority). Even if DOJ were only interested in comparing the Maryland voter file with DHS data to identify voters who may not meet state eligibility requirements—which might not require transferring the voter file to DHS custody—such database matching would not advance NVRA or HAVA enforcement. The NVRA's affirmative list maintenance mandate concerns only deceased registrants and those who are no longer eligible based on a change of address. *See* 52 U.S.C. § 20507(a)(4); *see also, e.g.*, *Am. Civ. Rights Union v. Phila. City Comm'rs* (*ACRU*), 872 F.3d 175, 182 (3d Cir. 2017) ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away."). HAVA specifies that appropriate officials must remove voters from statewide voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters . . . consistent with the [NVRA]," *id.* § 21083(a)(4)(A), and this provision does not "broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *see also ACRU*, 872 F.3d at 184–85 (rejecting contention that HAVA "augment[s]" NVRA list maintenance requirements); 52 U.S.C. § 21083(a)(2)(B) (guidelines for list maintenance); 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA). Federal data concerning deaths and changes of address are held by the Social Security Administration and the U.S. Postal Service respectively, not DHS. *See* 42 U.S.C. § 1306c(d) (defining the Social Security Death Master File); 52 U.S.C. § 20507(c)(1) (describing use of Postal Service address

8

information by election officials); *see also* 39 C.F.R. § 122.2(b) (providing for prompt transmission of change-of-address information to election officials); Exec. Order. No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (ensuring that the Social Security Administration allows election officials to access the Death Master File). Thus, DHS data is not relevant to NVRA and HAVA enforcement.

Adding the complete, unredacted Maryland voter file to a DOJ national voter database also does not advance even the pretextual purpose of investigating Maryland's NVRA and HAVA compliance. The NVRA requires that states conduct only a "reasonable effort to remove the names of ineligible voters by reason of the death of the registrant[] or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). With respect to movers, the "reasonable effort" requirement can be met using Postal Service data alone. *See id.* § 20507(c)(1). In any case, joining the Maryland voter file to another state's voter file—a file Maryland does not possess and is not legally required to obtain—does not help DOJ determine whether Maryland has met the "reasonable effort" requirement. *Cf. id.* § 21083(a)(2)(A)(ii) (requiring voter file coordination with in-state databases on felony status and records of death). HAVA merely reiterates the NVRA's list maintenance requirements, *see, e.g.*, *Bellitto*, 935 F.3d at 1202; *ACRU*, 872 F.3d at 184–85, and comparison to another database has no bearing on design mandates, such as consolidation of duplicate registration records, *see id.* § 21083(a)(2)(B)(iii).[3]

---

[3] Through the Electronic Registration Information Center—a membership organization made up of 24 states and the District of Columbia—Maryland obtains cross-state mover reports based on voter registration and motor vehicle data. *See* Electronic Registration Info. Ctr., *FAQ's*, https://perma.cc/AY53-TF3Z; *see also* Electronic Registration Info. Ctr., *Technology & Security Overview*, https://perma.cc/CY4E-85VL. However, 25 states that register voters do not participate in this exchange, and federal law does not mandate interstate comparison of voter registration records. The United States suggests that states participate in interstate data exchanges to help identify and remove "duplicate voter registrations." DOJ Mem. at 11. This makes little sense, as HAVA addresses only duplicates within a single statewide database.

9

Even if Title III required the Attorney General's representative to provide only "a purpose" and not "the purpose" of a demand—and it does not—DOJ's demand for the complete, unredacted Maryland voter file is unrelated to "Maryland's compliance with the list maintenance requirements of the NVRA and HAVA." Aug. 18 Ltr. at 2.[4] For nearly two decades, DOJ has neither demanded nor required a complete, unredacted voter file to investigate NVRA violations or oversee compliance with a remedy. *See, e.g.*, Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018), https://perma.cc/G2EZ-UUA5 (describing 2017 letters to all 44 states covered by the NVRA requesting list maintenance information but not demanding voter files). And with good reason. As noted above, the NVRA's affirmative list maintenance mandate requires only a "reasonable effort" to remove deceased registrants and registrants who have moved out of state. *See* 52 U.S.C. § 20507(a)(4); *see also id.* § 20507(c)(1)

---

[4] In other states, DOJ asserted that the purpose of obtaining the unredacted voter file is to ascertain compliance only with the NVRA or only with HAVA. *See, e.g.*, Ltr. from Harmeet K. Dhillon, Assistant Att'y Gen., Civ. Rights Div., U.S. Dept. of Justice, to David Scanlon, N.H. Sec'y of State (Aug. 18, 2025), *United States v. Scanlan*, 1:25-cv-371 (D.N.H. Sept. 30, 2025) (HAVA only), ECF No. 6-9; Ltr. from Shirley N. Weber, Cali. Sec'y of State, to Harmeet K. Dhillon, Assistant Att'y Gen., Civ. Rights Div., U.S. Dept. of Justice (Aug. 21, 2025), *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 7, 2025) (NVRA only), ECF No. 37-2 at 24–25 . DOJ has also incorporated a demand for the unredacted voter file as a purported oversight measure in a recent consent decree. *See* Consent J. & Order ¶ 11, *United States v. N.C. State Bd. of Elections*, No. 5:25-cv-283 (E.D.N.C. Sept. 8, 2025), ECF No. 72. The Attorney General's assertion of varying purposes for identical voter file demands suggests that the claimed enforcement aims here are mere pretext. *Cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (deeming departures from substantive and procedural norms to be evidence of pretext). Shockingly, immediately after the shooting of Alex Pretti, the Attorney General tied the handover of Minnesota's unredacted voter file to the "chaos in Minnesota." Ltr. from Pamela Bondi, Att'y Gen., to Tim Walz, Gov. of Minn. (Jan. 24, 2026), https://perma.cc/9WT4-HQF4; *see also* Notice of Corrections to the Record at 5, *AFSCME v. Soc. Security Admin.*, No. 1:25-cv-596 (D.D.C. Jan. 16, 2026), ECF No. 197 (disclosing "Voter Data Agreement" under which Social Security Administration agreed to "analyze state voter rolls" with the aim of "overturn[ing] election results in certain States").

(allowing the requirement concerning movers to be met as a matter of law using safe harbor procedures). DOJ has recognized this flexible standard since the Act's passage. *See, e.g.*, U.S. Dep't of Justice, *The National Voter Registration Act of 1993* (last updated Nov. 1, 2024), https://perma.cc/D8YZ-F9AM; U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 2024), https://perma.cc/J3C2-WSSE. Thus, state and local procedures establish compliance; voter files that result from those procedures do not. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–26 (6th Cir. 2025) (defining "reasonable effort" as "a serious attempt that is rational and sensible" and rejecting any "quantifiable, objective standard"), *petition for cert. pending*, No. 25-437 (filed Oct. 7, 2025); *Bellitto*, 935 F.3d at 1205 (finding a "reasonable effort" based on safe harbor procedures alone). Even if DOJ could use unredacted voter data to find deceased voters on the registration rolls, *see* Mem. of L. ("DOJ Mem.") at 11, ECF No. 2-1, this would not indicate that state actions to remove such voters did not meet the "reasonable effort" requirement, *see Benson*, 136 F.4th at 626–27 (rejecting identification of "27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of an NVRA violation). Ultimately, the NVRA places responsibility for voter registration list maintenance with the States and does not authorize the DOJ to search for individual registrants that federal officials suspect may not meet state eligibility requirements.[5]

---

[5] In 2006 and 2008, DOJ sought and obtained two state voter registration files, including Social Security numbers, for the ostensible purpose of assessing NVRA compliance. *See* Compl. ¶ 9, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006); Consent Decree, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 30, 2006); Tex. Mem. of Understanding (May 13, 2008), *United States v. Toulouse Oliver*, No. 1:25-cv-1193 (D.N.M. Jan. 27, 2026), ECF No. 51-6. DOJ did not pursue an enforcement action based on either file, *see* U.S. Dep't of Justice, *Cases Raising Claims under the National Voter Registration Act*, https://perma.cc/A3JG-CNZA, and for the next 17 years abandoned any attempt to use voter files to assess NVRA compliance.

HAVA enforcement also does not require or use complete, unredacted voter files. Although HAVA requires that statewide voter registration databases have specific list maintenance capabilities, *see* 52 U.S.C. § 21083(a)(2), (a)(4), these requirements are implemented pursuant to state discretion, *id.* § 21085. DOJ previously recognized as much when it entered a consent decree with the State of New Jersey requiring "reasonable steps" to identify possible duplicate registrations and movers and "review" of registrants previously identified "as potentially deceased"—not perfect removal of ineligible registrants and consolidation of duplicate records. Stipulation & Order ¶¶ 4, 8–9, *United States v. State of New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006) ("N.J. Consent Decree"), https://perma.cc/TF6V-NUY4; *see also* U.S. Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11–14 (July 2005), https://perma.cc/KJX9-ZZ3W ("recogniz[ing] the fallibility of databases" and prioritizing "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters" (first alteration in original) (quoting HAVA § 303(a)(4)). Once a HAVA-compliant system was in place, the decree required reporting of list maintenance statistics but did not demand copies of complete, unredacted voter files. *See* N.J. Consent Decree ¶ 11. Although DOJ now claims it needs unredacted voter files to determine if voters have been registered without submitting a driver's license or Social Security number since HAVA went into effect, *see* DOJ Mem. at 10–11; *see also* 52 U.S.C. § 21083(a)(5), that inquiry at most requires production of voter records *lacking* personal identifying information, along with associated registration dates. Producing records that include driver's license and Social Security numbers does not assist bona fide HAVA enforcement.

12

## II.     Title III Requests Are Subject to Ordinary Judicial Oversight.

DOJ cannot avoid scrutiny of the basis and purpose for its Title III demand by claiming that the Civil Rights Act of 1960 authorizes a "special statutory proceeding." *See, e.g.*, DOJ Mem. at 5; *see also Ensuring Election Integrity and Fixing Immigration*, *supra* (at 2:41) ("The 1960 Civil Rights Act is actually very clear. The Attorney General doesn't have to show her homework as to what she is going to do with it, and I am her designee. So, I get to ask for that information and they have to give it."). In fact, Title III requires an honest statement of "the basis and the purpose" of the request. 52 U.S.C. § 20703. The grave issues at stake in this litigation require this Court to subject the Attorney General's request to exacting scrutiny under the procedures mandated by the Federal Rules and fundamental due process. *See* Md. Opp'n at 2-6, ECF No. 35.

Title III does not authorize the "special statutory proceeding" that the United States demands. DOJ relies on the 1962 decision of the U.S. Court of Appeals for the Fifth Circuit in *Kennedy v. Lynd*, 306 F.2d 222, to make this claim. *See* DOJ Mem. at 5–6, 13–14. To be sure, *Lynd* indicated that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." 306 F.2d at 226 (quoting former 42 U.S.C. § 1974b). But *Lynd* was decided in the early 1960s, an era of racist disenfranchisement and massive resistance to civil rights, even within the federal judiciary. *See, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962) (reversing dismissal in conflict with controlling law). And "history did not end in 1965." *Shelby Cnty. v. Holder*, 570 U.S. 529, 532 (2013). In 1965, the Voting Rights Act removed the exigency that might have justified paltry process by suspending disenfranchising tests and devices that Title III had been used to investigate and imposing preclearance on states that had

13

used them. *See South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966) (describing case-by-case use of Title III); *see also id.* at 319, 333–34 (upholding suspension of disenfranchising tests and devices in covered states). Six decades since DOJ last litigated a Title III action, basic principles of federal law dictate that the requisite statement of the basis and the purpose for a Title III request is subject to judicial oversight.

  Rule 81(a)(5) now establishes that the Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." These rules protect the rights of recipients and guarantee that "an adversary hearing, if requested, is made available." *Becker v. United States*, 451 U.S. 1306, 1308 (1981) (quoting *United States v. Powell*, 379 U.S. 48, 58, n.18 (1964)). Indeed, just two years after the Fifth Circuit decided *Lynd*, the Supreme Court required the government to establish statutory requirements before a tax subpoena may be enforced. *See Powell*, 379 U.S. at 57–58. Even after a federal official has met that burden, the recipient of a summons or subpoena must be afforded the opportunity to rebut the prima facie case or establish an abuse of process. *See, e.g.*, *Spell v. United States*, 907 F.2d 36, 38 (4th Cir. 1990). Such due process is the prerequisite to judicial enforcement of a records request issued by another branch of government. *See, e.g.*, *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862–63 (2020) (addressing whether a subpoena was "related to, and in furtherance of, a legitimate task of the Congress" (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957)).

  The text of Title III does not insulate the demand from judicial review. 52 U.S.C. § 20703; *cf.* Fed. R. Civ. P. 81(a)(5) (allowing exclusion from the Federal Rules as "provided by statute"). Rather, Title III's jurisdictional provision authorizes only "appropriate process to

14

compel the production" of documents. 52 U.S.C. § 20705; *see also Raffensperger*, 2026 WL 184233, at *3 (requiring strict adherence to the text of Title III). Where Congress authorizes alternative procedures to the Federal Rules of Civil Procedure, it does so explicitly and in detail. *See, e.g.*, 42 U.S.C. § 2000a-5 (procedures under Title II of the Civil Rights Act of 1964); *see also Katzenbach v. McClung*, 379 U.S. 294, 295–96 (1964) (describing these procedures as "a special statutory proceeding"). Moreover, the statutory requirement that the Attorney General must offer "the basis and the purpose" for a Title III request would serve no purpose if—as DOJ contends—federal courts may adjudicate only whether a demand has been made and the custodian of documents has received notice of the proceeding. It remains possible that an "assertion that the demand was made for the purpose of investigating possible violations of a Federal statute" could meet the basis and purpose requirement, *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963), but only when the assertion is complete and accurate, *cf. SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."). Here, DOJ suggested that it needed the complete, unredacted Maryland voter file to investigate NVRA and HAVA compliance, at best a fishing expedition and at worst simple pretext. While DOJ might ordinarily be presumed to be acting in good faith, "appropriate process" requires an opportunity to prove otherwise. *See In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962); *see also, e.g.*, *LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 187 n.29 (D.D.C. 2025) (describing misrepresentation in recent election litigation).[6]

---

[6] The presumption of regularity articulated in *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 15 (1926), does not shield official actions "from a thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). In recent months, district courts have repeatedly "identified serious defects in the government's explanations and representations . . . prompting judges to discount government submissions, compel expedited

15

The U.S. District Court for the Central District of California recently determined that "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 2026 WL 118807, at *8; *see also id.* (confirming that "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures" and that "appropriate process" allows courts to "determine that the DOJ has not met Title III['s] statutory requirements"). Eleven days later, the U.S. District Court for the District of Oregon dismissed another Title III suit, with opinion to follow. *See* Minute Order, *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Jan. 26, 2026), ECF No. 68. A third federal court recently concluded that Title III "gives the district court jurisdiction to receive and adjudicate applications by the Attorney General seeking to enforce the disclosure obligations provided for therein" following full briefing and oral argument. Order, *United States v. Thomas*, No. 3:26-cv-21 (D. Conn. Jan. 14, 2026) (as amended), ECF No. 30. This Court should follow the emerging consensus, impose rigorous scrutiny, deny the "motion for order to compel," and dismiss the Title III claim.

## CONCLUSION

For the reasons set out above, this Court should deny the United States' "motion for order to compel" and grant Administrator DeMarinis's Motion to Dismiss.

---

discovery, and withhold the presumption." Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Nov. 20, 2025), https://perma.cc/PL5G-BTAN.

16

Respectfully submitted,

*/s/ Monica R. Basche*
Andrew D. Levy (Fed. Bar No. 00861)
Monica R. Basche (Fed. Bar No. 20476)
Brown Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
adl@browngold.com
mbasche@browngold.com

February 2, 2026

*/s/ Daniel J. Freeman*
Daniel J. Freeman*
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20003
Phone: 202-863-8000
Fax: 202-863-8063
freemand@dnc.org

*Counsel for Proposed Amicus Democratic National Committee*

*\* Application for pro hac vice admission forthcoming*

17