UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br><br> v. <br><br><br> JARED DEMARINIS in his official capacity as STATE ADMINISTRATOR of Elections for the State of Maryland, <br><br> Defendant. | Case No. 1:25-cv-03934-SAG <br><br><br><br><br><br> UNITED STATES' RESPONSE TO NOTICES OF SUPPLEMENTAL AUTHORITIES BY DEFENDANT ADMINISTRATOR JARED DEMARINIS AND INTERVENOR-DEFENDANTS COMMON CAUSE, ET. AL (Dkts. 70 – 72) |

The United States responds to three separate statements of Supplemental Authority. First, the United States responds to supplemental authorities filed by Maryland State Administrator of Elections Jared DeMarinis (Dkt. 71) and Intervenor-Defendants Common Cause (Dkt. 72) regarding *United States v. Fontes*, Case No. 2:26-cv-00066 (D. Ariz. Apr. 28, 2026). The United States also responds to a separate supplemental authority in which Administrator DeMarinis provided information regarding Maryland's partial correction to its EAVS data. (Dkt. 70).

In *Fontes*, the district court repeated the errors made in *United States v. Benson*, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal pending*, No. 26-1225 (6th Cir.), ruling that voter registration lists (VRLs) do not "come into … possession" of an election officer. The court compounded that error by reasoning that a "record" covered by 52 U.S.C. 20701 does not include a VRL because the NVRA and HAVA require VRLs to be constantly "altered," in supposed violation of 52 U.S.C. 20702. *Fontes* is wrong on both points, which have been briefed in pending

appeals before the Sixth Circuit, *see Benson*, No. 26-1225, and the Ninth Circuit, *see United States v. Oregon*, No. 26-1231, and *United States v. Weber*, No. 26-1232.

First, when a word is undefined in a statute, courts "give the term its ordinary meaning." *Taniguchi v. Kan Pacific Saipan, Ltd*., 566 U.S. 560, 566 (2012).  Secretaries of State "come[] into possession" of VRLs when they acquire them in the conduct of their official responsibilities, regardless of the information's source.  *See Webster's New World Dictionary of the American Language*, 291, 1140 (8th coll. ed. 1960); Brief for the United States, *United States v. Benson*, No. 26-1225 (6th Cir.), Dkt. 25, 15-22.

Second, *Fontes*'s distorted construction of § 20702 does not justify its misapplication of § 20701.  Title III's prohibition on the willful alteration of records cannot apply to VRL maintenance.  The surrounding verbs elucidate the meaning of "alter" in this provision.  *Fischer v. United States*, 603 U.S. 480, 487 (2024).  Those verbs all describe actions typically taken to make a document unavailable, inaccessible, or inaccurate for evidentiary purposes.  *Id.* at 489-90 (analyzing similar list of verbs).  And the use of "willfully" in criminal statutes generally requires the defendant to act "with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192 (1998).  List maintenance is a statutory duty, not unlawful conduct.

Finally, in the Administrator's other supplemental authority, he states that in February 2026 Maryland updated "portions" of problematic data via an "errata" to the United States Election Assistance Commission.  *See* Dkt. 70, Errata Note, available at https://www.eac.gov/sites/default/files/2026-02/Errata_Note_2024_EAVS_v2.pdf  (Feb. 12, 2026). The Administrator's supplement fails to identify which "portions" of the problematic data were updated. Reference to the Errata Note, though, shows that Maryland's update appeared to be

limited to the precise numbers of its unreturned confirmation notices, changing from 1.5 million to some 650,000. *Id.* Maryland does not explain why 650,000 is not problematic.

Moreover, Maryland's Errata Note to its EAVS data does not address any of the missing information regarding deceased, registered voters. *Id.* Maryland's Errata Note also fails to address any of the issues with duplicate registrations. *Id.* Maryland's action in February 2026 occurred more than six months after the United States identified the problems in the July 2025 letter (Dkt. 2-2 at 2) and even after the Motion to Dismiss in this case was filed (Dkt. 34). These discrepancies in Maryland's data are the appropriate subject of investigation by the Attorney General.

Dated: May 5, 2026

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section

/s/ Joseph W. Voiland
Joseph W. Voiland
Brittany E. Bennett
Raymond Yang
Civil Rights Division
4 Constitution Square
Washington, D.C. 20002
Joseph.Voiland@usdoj.gov
(202) 353-5318