IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore)

| | |
|---|---|
| THE UNITED STATES OF AMERICA | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : Case No.  1:25-cv-03934-SAG |
| | : |
| JARED DEMARINIS | : |
| | : |
| *Defendant.* | : |
| | : |

**MARYLAND ELECTION INTEGRITY, LLC'S BRIEF AS AMICUS CURIAE**

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Coleman v. Kennedy*,
  313 F.2d 867, 868 (5th Cir. 1963)………………………………………………………..12

*Kennedy v. Lynd*,
  306 F. 2d 222, (5th Cir. 1962)……………………………………………………...2, 4, 6, 11, 12

*Kennedy v. Lewis*,
  325 F. 2d 210 (1963)………………………………………………………………………..11

*United States v. Amore*,
  2026 U.S. Dist. Lexis 84709, 2026 LX 129028, ___ F. Supp.3d.____,
  2026 WL 1040637…………………………………………………………………..4, 5, 6, 8, 11

*United States v. Galvin*,
  U.S. Dist LEXIS 81772; 2026 LX 133319; ___ F. Supp ___; 2026 WL
  972129 (2026)…………………………………………………………………………………..8

*United States v. Oregon*,
  2026 U.S. Dist Lexis 25259; 2026 LX 27719 (2026)………………………………6, 8, 11

*United States v. Powell*,
  379 U.S. 48, 85 S. Ct. 248, 13 L. Ed 2d 112 (1964)………………………4, 6, 8, 9, 10, 11

*United States v. Weber*,
  2026 U.S. Dist. LEXIS 8545; 2026 LX 40897; ___ F. Supp. ___; 2026
  WL 118807 (2026)………………………………………………………………….6, 8, 11

*Weems v. McCloud*,
  619 F. 2d 1081 (1980)………………………………………………………………………11

FACTUAL BACKGROUND: The factual background has been laid out in detail in the Complaint and thoroughly analyzed in the Defendant's Motion to Dismiss and associated filings. The Attorney General of the United States of America (hereinafter the "AG") made a demand upon Jared DeMarinis, the current State Administrator of Elections. The demand was for all records related to the last election and was made pursuant to title III of the Civil Rights Act (hereinafter the "CRA"), the Help America Vote Act (hereinafter referred to as "HAVA"), and the National Voter Registration Act (hereinafter referred to as "NVRA").

The same demand was made across the country to nearly every state. Maryland is not being singled out. The vast majority of states recognized the AG's authority and promptly complied. Ten or so states have decided that they can possess information about the federal elections to which the AG is not entitled. Of those ten or so, four courts have entered a ruling denying access to the AG. The reasoning of all four is the same and is analyzed thoroughly herein. The reasoning is faulty.

CRA

The primary source of authority for the AG's demand are sections 20703 and 20701 of title 52 of the United States Code.

20701. Every officer of election shall retain and preserve, for a period of 22 months from the date of any general, special, or primary election of which candidates for the office of President, Vice President…all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.

Accordingly, Congress requires that Maryland Board of Elections (hereinafter referred to as "MBOE") retain "all records and papers". The reason for this is found two sections later.

1

20703. Any record or paper required by section 20701 of this title shall, upon demand in writing by the Attorney General…be made available for inspection, reproduction, and copying…. This demand shall contain a statement of the basis and the purpose therefor.

These code sections came about at a time when states were denying African-Americans the right to vote using many different schemes. Congress reacted to create a vehicle by which the AG could investigate and determine if elections were being run fairly. Wisely, they did not limit the inquiry to race based dishonesty. Political power grabs know no limit or boundaries as to the extent and type of illegal conduct. It appears that certain states continue to refuse to disclose their voting records to the federal government, even in 2026.

The aforementioned two sections of Title III of the 1960 Civil Rights Act are unambiguous. Mr. DeMarinis is required to retain all records from the 2024 election and, upon written demand that contains a basis and purpose, make them available to the AG for inspection, reproduction, and copying. The two Civil Rights Act sections provide no mechanism by which the MBOE can refuse to be transparent.

KENNEDY v. LYND, 306 F. 2d 222 (5th Cir. 1962)

In case there was any doubt about the authority granted by Congress to the AG to obtain without protest or delay the election records of any state, the Fifth Circuit was clear in its 1962 opinion. The southern states of Mississippi and Louisiana were refusing to comply with demands from the AG. In response, the AG filed an action referred to in *Kennedy* as a "Title III proceeding", seeking an order requiring the states' election officers to produce the records requested.

The Fifth Circuit first "emphasized again that the filing of the application by the Attorney General is not the commencement of an ordinary, traditional civil action with all of its trappings. It is, however, comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.,* at 225.

The court went on to say that "…Title III provides 'an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles. [T]he function sought to be exercised by the Attorney General is…purely investigative.'" *Id.*

To begin a proceeding in the United States District Court for enforcement, "All that is required is a simple statement by the Attorney General that after a section 1974b written demand for inspection of records and papers…., the person against whom an order for production is sought under 1974 has failed or refused to make such papers available for inspection, reproduction, and copying." *Id.* at 226.

"There is no place for a motion for a bill of particular or motion for a more definitive statement. There is no place for any other procedural device or maneuver, either before or during any hearing on the application to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor.'" *Id.*

As to any hearing, the Fifth Circuit was clear as to the limitations placed on a Title III proceeding. "In the event of a genuine dispute thereon, it would be in order for the Court to determine whether the written demand has been made, or whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceedings. On the other hand, the factual foundation for, or the sufficiency of, the Attorney General's

3

statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment. Nor is the scope of the order to produce insofar as it concerns the nature of the records or papers. …The incorporated standard of section 1974 is sweeping." *Id.*

*Kennedy v. Lynd,* supra, has been cited at least 30 times since it was authored nearly 65 years ago. It has not been overturned, criticized, or in any way marginalized. Nevertheless, the U. S. District Courts of Democrat led states that refuse to comply have effectively attempted to overturn the Fifth Circuit.

UNITED STATES v. AMORE, 2026 U.S. Dist. Lexis 84709, 2026 LX 129028, ___ F. Supp.3d.____, 2026 WL 1040637,

The U.S. District Court for Rhode Island on April 17, 2026, entered an order and filed an opinion by which it denied the AG's request for relief in the Title III proceeding brought to enforce its request for election records of Rhode Island.

Judge McElroy echoed the reasoning of Oregon, California, and Wisconsin, the other trial courts that tried to overturn the 5th Circuit. Dripping with disdain, the *Amore* court said, "The sole support for the United States' position is a line of Fifth Circuit cases 'from the 1960s'" *Id.,* at 11. Judge McElroy dismisses the clear language of *Kennedy* by referring to a Supreme Court decision, *United States v. Powell*, 379 U.S. 48, 85 S. Ct. 248, 13 L. Ed 2d 112 (1964), stating that SCOTUS held that "a demand made pursuant to a similar statute authorizing the production of documents by 'appropriate process' could be challenged 'on any appropriate ground' and that the Government was required to show that they had met all of the statutory criteria for their request.". *Powell* will be thoroughly discussed and distinguished later in this brief.

4

*Amore* held that Rhode Island does not have to comply with the "kind of fishing expedition" the AG seeks. There is no doubt that the sole purpose of this section of the Civil Rights Act is investigatory; to mockingly call the efforts of the AG a "fishing expedition" fails to recognize the exact purpose of this statute.

First, Judge McElroy decides that a Title III proceeding is "an ordinary civil action." She held that the application filed by the AG must set forth a "plausible claim", as though it is unclear what action the AG seeks.

Judge McElroy goes on to imply that Title III proceedings are only for race-based voting discrimination, while acknowledging that the statute is not so limited: "At issue in this case is whether the Attorney General may use section 20703 to demand voting records for purposes unrelated to voting-related racial discrimination. **The statute itself does not cabin its application solely to that context**. But it does impose one crucial requirement on any voting records demand by the Attorney General: the demand "shall contain a statement of the basis and the purpose therefore." (emphasis added) She then goes on to find that although the stated purpose was "to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA", but "the court finds that neither the basis nor the purpose proposed by the United States for its demand is legally sufficient to support a claim under Title III." *Id.,* at 14.

Falling in line with the other Democrat jurisdictions, Judge McElroy cites the recent Wisconsin, California, and Oregon trial court rulings as though they are precedent that outweigh the 65-year-old published 5th Circuit opinion. The *Amore* court "finds that the Attorney General's demand lacks a legally sufficient basis to satisfy Title III's requirements.", notwithstanding that the statute and the case law interpreting that statute set no such standard.

*Amore* seeks to overturn the *Kennedy v. Lynd* case and create new law. This, it cannot do.

UNITED STATES v. OREGON, 2026 U.S. Dist Lexis 25259; 2026 LX 27719 (2026).

Similarly, the court in Oregon ruled that the basis and purpose were insufficient, and that because *Kennedy v. Lynd* is 60 years old, the Oregon court does not have to follow it. The Oregon judge asserted that "Plaintiff has cited no binding authority for its proposition [for the statements of law found in Lynd], nor even any cases which apply Lynd and the other Fifth Circuit decisions within the last sixty years." Presumably, the Oregon court does not consider the Fifth Circuit published opinion, cited nearly 30 times, to be binding authority; rather, the Oregon court finds the California trial court decision from a few months ago to be persuasive.

The Oregon judge also attempts to assert that *Powell v. U.S.,* supra (also 60 years old), somehow reverses *Kennedy*. As set forth below, it does not; the *Powell* decision actually supports *Kennedy*. The Oregon decision is wrong and does not support the Maryland Board of Election's refusal to comply with the AG's demand.

UNITED STATES v. WEBER, 2026 U.S. Dist. LEXIS 8545; 2026 LX 40897; ___ F. Supp. ___; 2026 WL 118807 (2026).

In California, Judge Carter asserts that the request for voter information by the Attorney General of the United States pursuant to the Civil Rights Act of 1960 is an "action that imperils all Americans." He preaches, "The taking of democracy does not occur in one fell swoop; it is chipped away piece-by-piece until there is nothing left." He continues, "The Department of Justice seeks to use civil rights legislation which was enacted for an entirely different purpose to amass and retain an unprecedented amount of confidential voter data."

6

Judge Carter misses the point that state government abuse of voter records and rights is the exact reason that the Civil Rights Act was enacted. Democrat-led states then and now continue to hide data from the United States Government, whose representatives are elected by those states. Judge Carter asserts that "the purpose of Title III is to detect voting-related racial discrimination." The problem for Judge Carter and all those who follow his opinion is the CRA Title III does not say that. There is no limit as to the "basis and purpose" for which the Attorney General can exercise its investigative powers. 52 USC 20703. Congress was obviously well aware that the AG might need to investigate other electoral misconduct by the states.

Another observation by the California court was that Title III was not passed as a tool for NVRA compliance, a statute that did not exist for several decades after Title III of the CRA was enacted. While obvious, the statement misses the point that NVRA sets certain requirements as to record keeping. Pursuant to NVRA, the defendant DeMarinis has a duty to maintain Maryland's voter records. CRA Title III requires production of all records. There will likely be many changes in the law over the coming decades and centuries; the obligation to produce records to the AG will likely not change.

The California court also issued a conspiracy theory that the basis and purpose set forth in its letter is not the truth. "But behind this screening, there appears to be a different purpose. A lawyer working in the DOJ's Voting Section tasked with obtaining states' voter rolls was concerned that "the data would be used not for purging voter rolls of people who aren't eligible to vote, but for broader immigration enforcement." The court actually cited a New York Times Magazine article for this position and used it as a basis for its ruling.

The court also concludes without explanation that "This sensitive and identifying information is private and not open to inspection by federal officials." There is no legal or logical basis for the proposition that information available to the state election officials is somehow not safe in the hands of federal election officials. The electoral misconduct in certain states that gave rise to the need for the CRA would seem to imply exactly the opposite.

The court goes on to say the CRA Title III requirement that the demand state a basis and purpose requires the AG to provide "reasoning…regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law." This language is suspiciously close to the definition of probable cause, which as discussed below, was expressly denied as a basis in the Powell case on which the California, Oregon, Rhode Island and Wisconsin courts rely.

UNITED STATES v. GALVIN, U.S. Dist LEXIS 81772; 2026 LX 133319; ___ F. Supp ___; 2026 WL 972129 (2026).

*Galvin* is not particularly helpful, as the court found that the letter that was supposed to contain a statement of the basis and purpose therefor contained no statement of any kind. True or not, it sheds no light on the proper interpretation of CRA Title III investigatory demands.

As *Amore, Oregon,* and *Weber,* rely on *Powell*, supra, an analysis of this case is required.

UNITED STATES v. POWELL, 379 U.S. 48, 85 S. Ct. 248,

It is immediately apparent that the facts and law in the *Powell* decision are not remotely analogous to *Kennedy*, nor does the *Powell* decision in any way negatively impact the important rulings in *Kennedy.* The reliance of the recent rulings thereon is misplaced. Notwithstanding these differences, ironically, the ruling in *Powell* was the same as in *Kennedy*: "Reading the statutes as

8

we do, the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired." As explained further below, this means that the IRS does not have to show cause or any other basis to require the taxpayer to produce documents. The *Powell* decision is consistent with *Kennedy* in finding that the government's right to demand production of documents is absolute.

It must be noted that, notwithstanding Judge McElroy asserting that *Powell* somehow overrules *Kennedy*, the *Powell* decision does not mention *Kennedy*, nor is there a hint of inconsistency between the rulings.

Secondly, the statute being interpreted is wholly different from CRA section 20703. The Internal Revenue Code section at issue is IRC 7605 (b), which is designed to protect taxpayers from overzealous IRS inspectors. The IRC statute is prohibitive in nature, directed at the federal government, and is designed to protect private citizens.

IRC 7605(b): No taxpayer shall be subjected to unnecessary examination or investigators, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

Compare this to the language of the CRA:

52 USC 20703: Any record or paper required by section 20701 of this title shall, upon demand in writing by the Attorney General…be made available for inspection, reproduction, and copying….  This demand shall contain a statement of the basis and the purpose therefor.

9

The IRC section prohibits certain lower agents of the IRS from a second round of demands for production of documents by taxpayers. The CRA requires state election officials to comply with a demand of the Attorney General. The former IRC section limits powers of the federal government in its dealings with taxpayers; the latter grants investigative powers.to the US Attorney General to make sure the state government officials are not also abusing citizens.

Powell refused to comply with a demand by the IRS to produce documents a second time for a year for which the statute of limitations had run by which the IRS could assess additional taxes, penalties, or interest, unless fraud was involved. The taxpayer asserted that the IRS must allege some basis for fraud to require him to comply. This is the same argument that Mr. DeMarinis makes in his motion to dismiss.

Notwithstanding that the purpose of IRC 7605(b) is to limit the powers of the IRS staff, the court stated, "We reverse, and hold that the Government need make no showing of probable cause to suspect fraud unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process, predicated on more than the fact of re-examination and the running of the statute of limitations on ordinary tax liability."

The Court went on to say, "Although a more stringent interpretation is possible, one which requires some showing of cause for suspecting fraud, we reject such an interpretation, because it might hamper the Commissioner in carrying out investigations he thinks warranted, forcing him to litigate and prosecute appeals on the very subject which he desires to investigate, and because the legislative history of section 7605 indicates that no severe restriction was intended." *Id,* at 52, 253, 117.

10

The ruling in *Powell* is completely consistent with and supportive of the *Kennedy* ruling. It is directly contrary to the position for which the *Amore, Oregon,* and *Weber* courts assert.

TREATMENT OF KENNEDY v. LYND

The recent rulings in *Amore, Oregon,* and *Weber* imply that the *Kennedy* decision is no longer good law, or that it somehow misinterprets the intent of Congress when it enacted title III of the 1960 Civil Rights Act. This is not true.

Courts have consistently treated *Kennedy v. Lynd* 306 F.2d 222, 225 (5th Cir. 1962) as the authoritative interpretation of Title III of the Civil Rights Act, and its core principles have been reaffirmed across decades of decisions. Early Fifth Circuit cases such as *Kennedy v. Lewis*, 325 F. 2d 210 (1963) and *Weems v. McCloud*, 619 F. 2d 1081 (1980) relied on *Lynd* to uphold the constitutionality of Title III and to define the limited, summary nature of proceedings brought by the Attorney General. Courts applying these cases have repeatedly emphasized that the statute imposes only minimal requirements, namely, a demand, refusal, and a general statement of purpose, and have rejected attempts to impose heightened evidentiary or procedural burdens. As reflected in subsequent decisions reaffirming this framework, the Attorney General is not required to establish a prima facie case or otherwise justify the investigation before obtaining access to voting records.

That understanding is not only reflected in the case law but is confirmed by the statute's legislative history. As the Fifth Circuit explained, quoting Senator Keating, one of the principal sponsors of the Act, the requirement that the Attorney General provide a "statement of the basis and purpose" for a records demand was intended to be minimal: the Attorney General need only identify the reason "in a general way," and "[c]learly a sufficient statement would be the assertion

11

that the demand was made for the purpose of investigating possible violations of a Federal statute."

*Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963). Critically, Congress made explicit that

"[n]o showing even of a prima facie case of a violation of Federal law need be made." Id. This

legislative history confirms the interpretation adopted in *Lynd*: Congress deliberately rejected any

requirement that the Attorney General demonstrate cause, justification, or evidentiary support

before obtaining access to voting records.

Not counting the recent rulings discussed herein, *Kennedy* has been cited over 30 times. It

has never been discredited, reversed, or overruled.

CONCLUSION

The arguments raised by the Maryland Board of Elections and those in support thereof are

without merit. *Kennedy,* supra, requires compliance and production.

WHEREFORE, *Amicus* Maryland Election Integrity, LLC hereby respectfully

requests that this Honorable Court grant the relief requested in the Complaint filed herein.

Respectfully submitted,

HARTMAN, Attorneys at Law

By:    /s/ C. Edward Hartman, III
       C. Edward Hartman, III, Bar No. 07716
       116 Defense Highway, Suite 300
       Annapolis, Maryland 21401-7047
       Telephone: (410) 266-3232
       Facsimile:  (410) 266-5561
       Email:     Ed@Hartman.law
       *Attorneys for Maryland Election Integrity, LLC*

12